143 N.J. Super. 423 (1976)
363 A.2d 376
MYRON W. KRONISCH ET AL., PLAINTIFFS-RESPONDENTS,
v.
THE HOWARD SAVINGS INSTITUTION, ETC., DEFENDANT-APPELLANT, AND HAROLD CHAMBERS ET AL., PLAINTIFFS-RESPONDENTS,
v.
BERKELEY SAVINGS AND LOAN ASSOCIATION, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1976.
Decided July 19, 1976.
*424 Before Judges LYNCH, LARNER and HORN.
Mr. William H. Hyatt, Jr. argued the cause for appellant The Howard Savings Institution (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Arthur D. Grossman argued the cause for appellant Berkeley Federal Savings & Loan Association (Messrs. Fox & Fox, attorneys).
Mr. Cyrus J. Bloom argued the cause for respondents (Messrs. Cyrus J. Bloom and Ronald L. Davison, on the brief).
*425 A brief was filed by Messrs. Jamieson, McCardell, Moore, Peskin & Spicer on behalf of amicus curiae New Jersey Bankers Association (Mr. Michael F. Spicer, on the brief).
A brief was filed by Mr. Hugo M. Pfaltz, Jr. on behalf of amicus curiae Savings Banks' Association of New Jersey.
A brief was filed by Messrs. Miller, Myers, Matteo & Rabil on behalf of amicus curiae New Jersey Savings League (Mr. Michael D. Matteo, on the brief).
The opinion of the court was delivered by LYNCH, P.J.A.D.
In these consolidated actions we granted defendants' respective motions for leave to appeal from an order determining that the actions are to be maintained as class actions, pursuant to R. 4:32-1(b)(3), with both a plaintiff and defendant class. In each case the named plaintiffs are to represent a class of mortgagor-borrowers, and the named defendants are to represent a class of mortgagee-lenders who have taken from the mortgagors federally-insured GI and FHA residential mortgages.
Plaintiffs allege that real estate tax escrow funds, received by defendants under their mortgages, were to be held "in trust" solely for the purpose of paying such taxes and that the mortgagees had no right to invest the funds and appropriate to themselves the income therefrom. Plaintiffs demand an accounting of all monies earned by defendants from investment of the tax payments. Based upon the same allegations, the complaint also charges a conspiracy in restraint of trade for which plaintiffs seek treble damages under the New Jersey Antitrust Act, N.J.S.A. 56:9-1 et seq.
The order appealed from was entered pursuant to the trial court's opinion reported at 133 N.J. Super. 124 (Ch. Div. 1975). Reference is made thereto for the factual background involved. For purposes of this appeal we take note of the enormity of the projected class litigation. We recognize that such a characteristic may appear to support the suitability *426 of class action disposition, i.e., one representative action rather than thousands of individual suits. However, the complexity of this suit if brought as a class action also raises the issue as to whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" in light of the difficulties likely to be encountered in the management of the class action. R. 4:32-1(b)(3).
In each year from 1967 to 1972 defendant The Howard Savings Institution (Howard) held between 12,130 and 11,565 active GI mortgages and from 8,644 and 10,876 active FHA mortgages. The average monthly tax escrow held by Howard for the year 1972 was $69.45 under the GI mortgages and $63.16 on the FHA mortgages. For each of the years 1964 to 1972 Berkeley Savings and Loan Association (Berkeley) carried between 1,851 and 1,302 active GI mortgages and between 1,224 and 985 active FHA mortgages, with the average monthly tax escrow of $85.36 for the former and $79.85 for the latter. The brief of the New Jersey Bankers Association asserts that since the inception of FHA in 1934 and GI in 1944, 780,944 loans have been made under those programs by New Jersey banks, involving a total of $9.7 billion in loans. The number of current loans in the programs in New Jersey total 317,616, representing $4.29 billion. Thus, the projected plaintiff class would have at least 780,944 members. Of the total of such loans made in the State, 60% have been paid or foreclosed.
With respect to defendant class the order below recites that it consists of approximately 20 mutual savings banks, 300 savings and loan associations, 213 commercial banks and other financial lending institutions in the State of New Jersey by which such GI and FHA mortgages are now or "were ever" held by those institutions as mortgagees.
The propriety of the order below must be measured by the policies embodied in our R. 4:32 and its progenitor, Fed. Rule Civ. Proc. 23. Among the objectives of a class action are the achievement of economies of time, effort and *427 expense in litigation. Advisory Committee's Note to the 1966 Amendments to Fed. Rule Civ. Proc. 23, 39 F.R.D. 95, 102-103. In furtherance of those objectives we have concluded that the trial judge's certification of the class action here was premature and is to be reserved as an appellate issue by adoption at the present time of the so-called "test case" approach of Katz v. Carte Blanche Corp., 496 F.2d 747 (3 Cir.1974) (en banc), cert. den. 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed. 2d 125 (1974).
We postpone our decision as to class action determination until the decision in the "test case."[1] As one authority has written, "A test case can be an appealing alternative to a class suit." 3B Moore, Federal Practice, § 23.45(3) at 813; see Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 570 (2 Cir.1968) (Lumbard, C.J., dissenting); Carpenter v. Suffolk Franklin Savings Bank, Mass., 346 N.E.2d 892, 896-898 (Sup. Jud. Ct. 1976); Colwell Co. v. Superior Court, 50 Cal. App.3d 32, 123 Cal. Rptr. 228 (D. Ct. App. 1975). We have decided that at this time the test case approach provides a superior method of adjudicating the present controversy.
The trial judge found that Howard and Berkeley admitted that every GI and FHA mortgage held by them as mortgagees contained the language that the tax escrow monies are to be held by the mortgagee "in trust" to pay real estate taxes. On appeal Howard and Berkeley contend that they made no such admission at the trial level but simply did not know whether all of their GI and FHA mortgages contained said language. We make no determination of that factual dispute. We assume that since such mortgages are federally insured, many of the mortgage documents are uniform and do contain the alleged language. Plaintiffs assert as a premise of their right to the order appealed from that said language does prevail. *428 To the extent that this is so, a decision as to whether such language makes the mortgagees liable to account for monies which they may have earned by investment of such funds may serve to avoid the time, expense and effort necessary to resolve the formidable problems which must be considered in the projected class action. These problems include: (1) the expense of giving the notice required by R. 4:32-3(b) to the hundreds of thousands of members of plaintiff class and the hundreds of members of defendant class, and the question of who is to bear such expense; (2) the determination (including discovery procedures) of possible individual claims and defenses which might require the creation of subclasses, including, according to defendants,[2] which members of the plaintiff class (a) have had their advance tax payments "capitalized," (b) have had their advance tax payments maintained in a separate, noninterest-bearing demand deposit account, (c) have executed GI or FHA mortgage forms containing different language, (d) executed and paid off their GI or FHA mortgages before the Kronisch or Chambers mortgages were executed or before the New Jersey Antitrust Act was passed, (e) have mortgages which are in arrears, in default or in foreclosure, (f) asked for permission to pay their taxes directly or inquired whether interest or earnings would be paid them with respect to advance tax payments, (g) read and understood their GI or FHA mortgages, while others did not read them at all or did not understand or misunderstood what they read, (h) expressed their understanding or had explained to them the bank's interpretation of the words "in trust" in their GI or FHA mortgages, (i) borrowed from nonsupervised FHA mortgagees, or (j) are depositors in Howard or Berkeley; (3) determination (including discovery procedures) of which members of plaintiff class, if any, are subject to the defenses of laches, *429 estoppel or waiver; (4) any other complexities which may develop in the course of managing the class action.
In Katz v. Carte Blanche Corp., supra, plaintiff, on behalf of himself and all other holders of Carte Blanche credit cards, sued for statutory damages for defendant's alleged failure to make pretransaction and transaction disclosures regarding the computation of finance charges to the holders in violation of the Truth in Lending Act (TILA), 15 U.S.C.A. §§ 1601-1681t. The trial court had granted Katz' motion for an order determining maintainability of the action under Fed. Rule Civ. Proc. 23(b)(3). The Third Circuit reversed, holding that a "test case" establishing liability or nonliability of Carte Blanche was a superior device to immediate determination of class status. The court reasoned that even though a judgment in the "test case" would not be res judicata, defendant would be collaterally estopped by a judgment finding liability against it. On the other hand, even though members of the plaintiff class would not be bound by a judgment in favor of defendant in the test case, nevertheless relitigation of the issue by members of the class would, for practical purposes, be discouraged by the stare decisis effect of the judgment in the test case. Because the language of the majority in Katz is applicable here we quote it at some length:
We think * * * that a new look [should] be taken at the alternative of a test case in lieu of an early class action determination. That new look must, as with all rule 23(b)(3) superiority determinations, take into account several different interests. Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant. The listing is not necessarily in order of importance of the respective interests. Superiority must also be looked at from the point of view of the issues.

* * * * * * * *
If there is a finding for the defendant on liability, the judicial system will be protected from relitigation of the essentially legal issue of compliance with TILA regulations by the discouragement of relitigation afforded by stare decisis.

* * * * * * * *
*430 Postponement of class action determination until the violation has been proved in no way prejudices the potential class members. If Katz loses his case on violation they will not be bound. If Katz establishes the violation they can be afforded the same opting out option [pursuant to F.R. Civ. P. 23(c)(2)], but the notice will advise them that there is a judgment establishing violation, and their decision will be more informed than if the notice was sent early in the proceedings.

* * * * * * * *
As to the original plaintiff, Katz, he is not affected with respect to the amount of his recovery or with respect to the trial of the case. He may be protected from the expense, in this case $37,500, of mailing out a notice to parties who have no rights. If he first establishes a violation, the district court may conclude that the defendant rather than he should bear the initial cost of the mailing. [496 F.2d at 760-761]
The same considerations applied here persuade us to adopt the technique adopted by the majority in Katz. (1) The interest of the judicial system in avoiding the burden of the complex class action projected, if it is unnecessary  as it may prove to be in the event of a finding that defendants are not liable on plaintiff's asserted thesis  seems apparent. (2) Postponement of class action determination until liability has been proved in a test case does not prejudice the potential members of the plaintiff class. If plaintiffs lose the test case, the members are not bound. If plaintiffs establish liability against defendant banks, the members of the plaintiff class may gain the benefit of that judgment through the doctrine of collateral estoppel. See Continental Can Co. v. Hudson Foam Latex Prod. 129 N.J. Super. 426 (App. Div. 1974). (3) Plaintiffs Kronisch and Chambers are not prejudiced by postponement of class determination: in fact, they may be protected from the expense of mailing out notices to the class. (4) Moreover, plaintiffs' attorneys will not lose their incentive for pursuing the action, because if liability is found against defendants, the class action may proceed if the order of maintainability is affirmed by this court on final review. (5) The interest of the judicial system expressed in (1) above is likewise a matter of the public's interest. (6) It is in defendants' interest that the expense and burden of *431 defending the class action be avoided if it is proved unnecessary by reason of a finding of nonliability on the main issue of the "in trust" language of the mortgage.
In sum, we conclude that since the decision in a "test case" may make unnecessary the management of the massive class action contemplated, maintenance of a class action is not, at this time, superior to the use of the test case approach. We do not pass on the propriety of the order appealed from except with relation to the "superiority" requirement of R. 4:32-1(b)(3). Accordingly, we reserve all other issues, including that of the composition of the projected classes. We remand the cases of Kronisch v. The Howard Savings Institution and Chambers v. Berkeley Savings and Loan Association to the trial court. That court is to determine the liability of defendants on the issue of their rights and obligations with respect to tax escrow deposits as they arise from the language of the mortgage documents. We further direct that on the remand the trial court is to exclude consideration of any defenses asserted against the named plaintiffs, such as laches, estoppel, waiver or other defense contentions unrelated to construction of the documentary language.
The trial court is to make findings and conclusions and file them with this court by November 1, 1976. Appellants' brief is then to be filed by December 1, 1976, and respondents' brief by January 3, 1977. Jurisdiction is retained in the Appellate Division and decision on the pending appeal is reserved.
NOTES
[1] This will not be a true test case, for the projected members of defendant class have not agreed to be bound by the result therein. Rather, as was said in Katz, it is a test case for "practical purposes." 496 F.2d at 758. It is in that sense that we refer to it here.
[2] We expressly refrain from indicating our views of defendants' contentions in these respects. We note only that the issues have been raised and will require resolution.