WILLIAM ROMANO, RAYMOND AKERSTEN, DONALD HAND, LAWRENCE O'BRIEN, BRUCE DECHER, JOSEPH AMATO, AND RICHARD STROPOLLI, PLAINTIFFS-APPELLANTS, CROSS-RESPONDENTS, v. IRWIN I. KIMMELMAN, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; CLINTON PAGANO, IN HIS OFFICIAL CAPACITY AS COLONEL OF THE NEW JERSEY STATE POLICE AND THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS, CROSS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued July 18, 1983—Decided July 27, 1983.

555

Before Judges POLOW, FRANCIS and McELROY.

*Francis X. Moore* and *John J. McDermott* argued the cause for appellants, cross-respondents (*Francis X. Moore* and *Thomas J. Smith,* attorneys and on the brief).

*Boris Moczula,* Deputy Attorney General, argued the cause for respondents, cross-appellants (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Boris Moczula* of counsel and on the brief).

The opinion of the court was delivered by

POLOW, P.J.A.D.

The seven plaintiffs, all charged with operating motor vehicles while under the influence of intoxicating liquor in violation of *N.J.S.A.* 39:4–50, instituted this action in the Superior Court alleging that use of "the Breathalyzer 900 and 900A by the State" deprives them and all others similarly situated of due process rights under the United States Constitution and of "rights, privileges and immunities secured by 42 *U.S.C.* § 1983." Thus, for themselves and all others similarly situated, plaintiffs demand an injunction against use of Smith and Wesson's Breathalyzer 900 and 900A test results as evidence in drunk driving proceedings, an injunction against further use of the designated breathalyzer models by law enforcement personnel, a

blanket order providing for new trials for plaintiffs and all persons previously convicted after trial or upon guilty plea in cases in which the designated breathalyzer models were used, and a prohibition against use of any prior conviction based upon such breathalyzer test results in determining second or subsequent offender status.

On April 26, 1983 the trial judge signed an order temporarily restraining introduction of breathalyzer model 900 and 900A test results in all cases unless the State could show compliance with current recommendations of the manufacturer, Smith and Wesson, in its September 10, 1982 Consumer Advisory or any changes thereof. Plaintiffs' motions for certification of the suit as a class action and for summary judgment were denied but a hearing was ordered for the purpose of receiving evidence including expert testimony on the reliability of the breathalyzer. The trial judge anticipated that a Superior Court determination made following such a hearing would then be subject to appellate review. Defendants' motions to dismiss the complaint and for adjournment of the hearing date were denied. Before the scheduled hearing could be conducted, both sides sought and were granted leave to appeal.[1]

On this appeal, plaintiffs challenge as reversible error the denial of certification of the suit as a class action and the refusal to apply collateral estoppel against the State based upon a prior municipal court determination, not involving these plaintiffs, that the breathalyzer models in question are unreliable.[2]

---

[1]Both sides oppose such a hearing. Plaintiffs' argue that a hearing is inappropriate because the issue was decided in a previous municipal court determination. See note 2, *infra.* Defendants seek summary judgment dismissing the complaint.

[2]The municipal court determination is referred to in this opinion as the *Lopat* case. The only document included in this appellate record from the *Lopat* case is a transcript of the oral opinion of the municipal court judge dated April 6, 1983, filed in Municipal Courts of Sea Bright, Highlands, Keansburg, Hazlet and Keyport. It contains no docket numbers.

Although the trial judge in the action which is the subject of this appeal dismissed the complaint as against the State,[3] defendants urge that the complaint should also have been dismissed as against the Attorney General and the Superintendent of the State Police because they are not "persons" within the meaning of 42 *U.S.C.A.* § 1983, (herein § 1983), there is no allegation of bad faith, plaintiffs have not been deprived of their due process rights and they have not demonstrated irreparable harm nor lack of an adequate remedy at law. We conclude that the complaint does not establish a right to relief under § 1983, there is an adequate remedy at law for plaintiffs and others similarly situated and the doctrine of collateral estoppel is not applicable to give a binding effect upon other courts of this State to the municipal court determination in the *Lopat* case.

Plaintiffs' collateral estoppel argument is that the State, having participated in the *Lopat* hearing, may not relitigate the breathalyzer reliability issue already ruled upon by a municipal court judge although no *Lopat* defendants are parties to this action. The record of the *Lopat* municipal court hearing has not been reproduced on this appeal. The oral opinion of the municipal court judge indicates that the *Lopat* defendants, all of whom had breathalyzer readings exceeding .10%, challenged the admissibility of those readings and the Attorney General intervened and represented the State pursuant to *N.J.S.A.* 52:17B–1 *et seq.* in the preliminary hearings dealing with the reliability of the breathalyzer test results. After extended hearings the municipal court judge, on April 6, 1983, rendered his oral opinion holding the breathalyzer readings unreliable and inadmissible. He found that Smith and Wesson Breathalyzer Models 900 and 900A had been authorized by the Administrative Code as breath testing instruments in June 1982 despite indications that certain radio equipment including walkie-talkies and other communica-

---

[3]Plaintiffs conceded that a § 1983 action would not lie against the State. *Quern v. Jordan,* 440 *U.S.* 332, 99 *S.Ct.* 1139, 59 *L.Ed.2d* 358 (1979); *see Meyer v. New Jersey,* 460 *F.2d* 1252, 1253 (3 Cir.1972).

tion devices produced interference with the operation of those machines. The judge found Smith and Wesson knew the problem and in September 1982 issued its customer advisory indicating that recent tests of the two designated models showed susceptibility to radio interference. Certain guidelines were recommended therein "as a matter of preparedness for courtroom testimony." It appears that the municipal court judge heard expert testimony and observed breathalyzer testing upon which he concluded that the breathalyzer test results were so unreliable as to be inadmissible against any of the *Lopat* defendants. Although given the opportunity to do so, the Attorney General did not seek leave to appeal from that preliminary determination. The record on this appeal does not reveal the ultimate disposition, if any, of the drunk driving charges against any of the *Lopat* defendants.

### The Demand For Class Action Certification

Plaintiffs propose recognition of various groups of persons for class action certification pursuant to *R.* 4:32–1 *et seq.* They suggest one group consisting of all persons convicted after trial in this State in proceedings involving use of breathalyzer models 900 or 900A within the two year period before the issuance of Smith and Wesson's Customer Advisory, a second group consisting of persons convicted more than two years before that date, a third group consisting of all persons who entered guilty pleas in reliance on breathalyzer 900 or 900A readings, and a fourth group consisting of all persons presently awaiting trial on drunk driving charges involving the use of the designated machines.

We are fully satisfied that certification of this suit as a class action would be totally inappropriate. Although a large number of individual defendants may seek to attack the reliability of the designated breathalyzer models, we agree with the trial judge's rationale in rejecting plaintiffs' class action argument. With regard to those proposed groups consisting of persons previously convicted, each application for a new trial based upon allegedly

"newly discovered evidence" must be decided on its own merits. The factual basis for each drunk driving conviction, the degree of reliance on breathalyzer readings, the precautions taken to assure reliability, and many other factors will vary with each set of circumstances. As to those who have charges pending, the tests and safeguards employed to assure breathalyzer reliability in current prosecutions will also vary from case to case and from municipality to municipality.[4] No judicial determination concerning the general reliability of breathalyzer testing or the safeguards required in using the machine can provide a blanket formula for relief to all members of the separate groups identified by plaintiffs as prospective classes. Ultimately, certification as a class action would unduly complicate the claims and issues but could not provide the vehicle for individual relief in cases so varied by way of factual and procedural circumstances.

Furthermore, applications on behalf of those previously convicted are in the nature of motions for post-conviction relief. *In re Petition of Carlos Santiago*, 104 *N.J.Super*. 110 (Law Div. 1968), aff'd o.b. 107 *N.J.Super*. 243 (App.Div.1969) held that

... there does not appear to be any right under our rules to bring a class action for post-conviction relief. The procedure is basically a criminal proceeding entitled in the cause, and filed in the county where the conviction was obtained. *R.R.* 3:10A–1 *et seq*. But even if the correct form of the action were *habeas corpus, N.J.S.* 2A:67–1 *et seq.,* a class action would not lie in the present circumstances. Our rule, *R.R.* 4:36–1, which is taken from *Rule 23* of the *Federal Rules of Civil Procedure,* governs class actions. Plaintiff would be asserting at most a spurious class right. This is basically a permissive joinder device and judgment in such an action binds only original parties of record or those who intervene and become parties of record or those who intervene and become parties to the action. [Citation omitted].

---

[4] It is of passing interest that four of the plaintiffs in this appeal allege they had breathalyzer readings indicating .16% blood alcohol or more. If the municipal court opinion in *Lopat* were to be considered, the only specific percentage variation noted was an .04% reading increase. Thus the four plaintiffs with test readings of .16% to .21% would have been subject to the presumption of intoxication mandated by *N.J.S.A.* 39:4–50.1(3) even if the readings were adjusted to compensate for possible interference deflections up to .06%.

Furthermore, it has been the general rule that several applicants cannot even join in one petition for writ of *habeas corpus*. [Citation omitted.] The theory behind the rule has been that a commitment to prison acts individually on each person committed, and a writ seeking his discharge on *habeas corpus* must likewise be individual. [Citations omitted.] [104 *N.J.Super.* at 115–116].

Thus we conclude there is no basis for class action designation for those previously convicted. For the others, those awaiting trial after breathalyzer tests, we conclude that the "formidable problems" we recognized in *Kronisch v. Howard Savings Inst.,* 143 *N.J.Super.* 423, 428–429 (App.Div.1976), would be no less complex nor more manageable here. The trial judge correctly concluded that class action certification does not provide an appropriate vehicle for the fair and efficient adjudication of all the issues which would require consideration.

### The Collateral Estoppel Argument

■ Plaintiffs also challenge the trial judge's determination that the State is not collaterally estopped from relitigating the reliability of the breathalyzer models found unreliable by the municipal court judge in *Lopat.* They emphasize that the municipal court hearing involved extensive expert testimony with full participation by the office of the Attorney General. They suggest that public policy, the expense of relitigating the same issue and the Attorney General's failure to seek leave to appeal from the preliminary determination of unreliability require application of the collateral estoppel doctrine.

Collateral estoppel is a doctrine that bars "relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." *State v. Gonzalez,* 75 *N.J.* 181, 186 (1977). Ordinarily, its application is limited to questions of fact or mixed questions of law and fact but it will be applied to pure questions of law if the claims stem from the same transaction or if injustice will otherwise result. *Id.* at 187.

Early decisions strictly adhered to the requirement of identity of parties or mutuality, citing the unfairness of providing a right or remedy for one party without affording the same to his

adversary. *Id.* at 188. The modern trend away from the mutuality requirement was launched in *Bernhard v. Bank of American Nat. Trust & Sav. Ass'n,* 19 Cal.2d 807, 122 P.2d 892 (1942). There, Justice Traynor distinguished between "those who may assert a plea of collateral estoppel and those against whom such a plea may be asserted." *State v. Gonzalez, supra,* 75 *N.J.* at 189. He proposed a three-pronged test for allowing estoppel: (1) the issue decided in the prior adjudication must be identical to the issue raised in the later action; (2) the earlier action must have been a judgment on the merits, and (3) the party against whom the claim is asserted must have been a party or in privity with a party in the prior adjudication. *Bernhard, supra,* 122 P.2d at 895. The weight of modern authority adopts this approach and carves out exceptions for retention of the mutuality requirement based upon "justice and fairness." *State v. Gonzalez, supra,* 75 *N.J.* at 189.

The courts of this State adopted the modern view for application in civil cases in *United Rental Equipment Co. v. Aetna Life & Cas. Ins. Co.,* 74 *N.J.* 92, 101 (1977). The flexible approach devised does not call for automatic application of the estoppel bar but is "closely tied to the practicalities of certain types of litigation and to the details of the prior adjudication." *State v. Gonzalez, supra,* 75 *N.J.* at 191. However, in criminal proceedings, the identity of parties requirement remains paramount, tempered by considerations of fairness to the defendant. *Id.* at 192–195.

The doctrine cannot be applied mechanically to the instant case. The net effect of plaintiffs' argument is that this court and all other state courts of general and superior jurisdiction are bound, by reason of collateral estoppel, to be controlled by the municipal court's evidential ruling in *Lopat,* a case involving other defendants. We cannot agree.

The question is one of general public importance and concern. The decision of an inferior court, not appealed or otherwise tested, as a matter of public policy cannot be permitted to become, by default, the final judicial ruling on this significant

evidential issue. We are not unmindful of our obligation to protect individual rights but of equal importance is our interest in the protection of public welfare and safety. The individual rights of these plaintiffs and of others similarly situated can be protected by their due process right to challenge the efficacy of the breathalyzer tests administered to them within the framework of their trials. Because this is so and because we live in an age when drunk drivers represent a significant cause of suffering and death, our responsibility for protection of the public interest overrides our concern for the time and expense suffered by plaintiffs and others who must protect their own rights individually. Collateral estoppel, although a principle designed to prevent relitigation of issues, should not be the device by which the greater public good is overridden because an evidential ruling of a municipal court, not appealed or otherwise tested, is urged as automatically binding upon courts of general and superior jurisdiction.

Here, plaintiffs were not parties to the *Lopat* case, had no privity relationship with the *Lopat* defendants, and more importantly, present no compelling basis for applying the evidentiary ruling of *Lopat* to their cases which are clearly based upon different facts and circumstances arising at different times in different places. This situation is, of course, entirely distinguishable from *Gonzales* where the parties were co-defendants with similar charges arising out of the same incident involving the same evidence claimed to have been illegally seized. Thus, application of the bar of collateral estoppel would be entirely inappropriate in this case. The *Lopat* ruling has no effect beyond the charges pending in that action against the named defendants therein.

*Applicability of § 1983 And The Right To Seek New Trials*

We agree with defendants' argument that plaintiffs fail to state a claim cognizable under § 1983. The Federal Civil Rights Act, 42 *U.S.C.A.* § 1983, provides that

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiffs' complaint alleges a deprivation of due process in having to choose between taking a breath test on a "flawed machine" and accepting the penalties for refusing to take the test as prescribed in *N.J.S.A.* 39:4–50.4. They contend further that the introduction of breath test results in previous drunk driving trials deprives them of due process because of the effect of their prior convictions on their possible future status as second or subsequent offenders. Finally, they argue that they may be or have been subjected to drunk driving convictions based upon a statutory presumption under *N.J.S.A.* 39:4–50.1(3) created by unreliable test readings.

We find no factual basis to support plaintiffs' argument that they have been or will be deprived of their due process rights. The record before us indicates that none of the pending charges against plaintiffs for violations of *N.J.S.A.* 39:4–50 have been tried. Each of plaintiffs, and all others similarly situated, will have the right at trial to contest the reliability of the breathalyzer reading and admissibility of the breath test. The susceptibility of the breathalyzer models in question to possible distortion by radio frequency interference is now a matter of public record.[5] Moreover, it is the *competence* of the evidence that must and can be resolved in the circumstances of each case, not its constitutionality.[6] Similarly, motions for new trials, if within time, may be sought by individuals claiming their prior convictions were tainted by distorted readings. Plaintiffs have the

---

[5]The trial court order dated April 27, 1983 referring to the Smith and Wesson Customer Advisory entitled "Guidelines for Radio Frequency Interference Testing," was published in the New Jersey Law Journal. 111 *N.J.L.J.* 481 (May 12, 1983).

[6]Defendants argue that the municipal court judge lacked authority to consider suppression of breathalyzer evidence. The argument comes late. The State in *Lopat,* by failing to seek leave to appeal a contrary ruling,

right to move for new trials in the courts in which they were previously convicted based upon their "newly discovered evidence" contentions. Thus, they have not been deprived of the right to due process within the purview of 42 *U.S.C.A.* § 1983.

■ We note that there is no authority for the Superior Court to consider an application for a new trial in the municipal court except on direct appeal pursuant to *R.* 1:1A–4. It cannot act in an appellate capacity where, as here, no timely appeal was taken to review plaintiffs' previous municipal court convictions. Any application for a new trial based upon newly discovered evidence must be made to the municipal court within two years after final judgment. *R.* 7:4–7. The law division was without jurisdiction to consider "new trial" applications in these circumstances.

## CONCLUSION

In summary, we conclude that individual motions for new trials based upon newly discovered evidence should be made in the municipal courts in which the judgments of convictions were entered; that a § 1983 action may not be used as a substitute for appeal or for a new trial motion in the appropriate court; that each plaintiff will have full opportunity to attack the accuracy of his breathalyzer reading at trial; and that plaintiffs

---

accepted the municipal court jurisdiction to hear the evidentiary matter. In any event, defendants rely on *R.* 3:5–7 which requires applications for suppression to be made "to the Superior Court only" in matters involving "an unlawful search and seizure...." They cite *State v. Harbatuk,* 95 *N.J.Super.* 54, 58 (App.Div.1967), in which the Appellate Division ruled that "... the township magistrate was without authority ... to suppress the evidence obtained following defendant's arrest." The suppression application in *Harbatuk,* however, was not based upon the competence of the evidence sought to be suppressed but rather on the alleged unlawful nature of the arrest itself. In *Lopat* the municipal court was concerned with the competence of the evidence based upon the reliability of the breathalyzer under the conditions existing at the time of its use. It is entirely appropriate for the municipal court to consider such a challenge to the manner in which the scientific evidence was obtained and the precautions taken to avoid distortion. *See, e.g., State v. Wojtkowiak,* 174 *N.J.Super.* 460, 463 (App.Div.1980).

have failed to demonstrate absence of an adequate remedy at law or risk of irreparable harm which would justify a § 1983 action.[7] *Bonner v. Circuit Court of City of St. Louis, Mo.,* 526 F. 2d 1331 (8 Cir.1975), *cert.* den. 424 *U.S.* 946, 96 *S.Ct.* 1418, 47 *L.Ed.*2d 353 (1976), reh'g den. 425 *U.S.* 926, 96 *S.Ct.* 1525, 47 *L.Ed.*2d 773 (1976).

For the reasons stated, we affirm the denial of class action certification and the denial of plaintiffs' motion for summary judgment on the ground of collateral estoppel. We reverse the denial of defendants' motion to dismiss the complaint. The complaint is dismissed and all restraints are vacated without prejudice to the right of each plaintiff to pursue his individual remedy in the appropriate forum.

---

[7] We do not suggest that there may not be an appropriate opportunity in a proper forum for a "test case" if the circumstances so warrant. *Kronisch v. Howard Savings Inst., supra,* 143 *N.J.Super.* at 427–431; *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 758–760 (3 Cir.1974) (*en banc*), *cert.* den. 419 U.S. 885, 95 *S.Ct.* 152, 42 *L.Ed.*2d 125 (1974). We hold only that, here, the allegations of the complaint present no justiciable issue within the original jurisdiction of the Superior Court. All of the claims asserted on behalf of the individual named plaintiffs are cognizable in and should be asserted in the appropriate municipal courts. Thus, this complaint should have been dismissed.