

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-1994

# Collins v. Dupont De Nemours & Co.

Precedential or Non-Precedential:

Docket 93-5756

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"Collins v. Dupont De Nemours & Co." (1994). *1994 Decisions.* Paper 124.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/124

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 93-5756
_____

JOHN COLLINS; SHIRLEY COLLINS, his wife;
JOHN WOJENSKI; ROBERT AUSTIN; JUANITA AUSTIN,
his wife; JOHN CAREW; FERDINAND PENA;
REGINA PENAL, his wife; LOUIS MADARASZ;
BEN DAVIS; BERLINE DAVIS, his wife; CHARLES STATEN;
MARY STATEN, his wife; RUDY TROUPE; BERNICE TROUPE,
his wife; WILFREDO RODRIGUEZ; CHARLIE DEWITT;
JULIA DEWITT, his wife; LUIS BASADRE; RAY BUNN;
JOYCE BUNN, his wife; CAL FAYARD; ROCHELLE FAYARD,
his wife; ZDZISLAW KOWALSKI; JADWIGA KOWALSKI,
his wife; ARTHUR BELL; PAT REILLY; MARY REILLY,
his wife; EMILIO RODRIGUEZ; ELIAS TZEMOS;
STAVROULA TZEMOS, his wife; CARLOS BARQUIN;
MIRELLA BARQUIN, his wife; CURTIS BROWN, JR.;
RALPH MORRELLO; CHRISTINE MORRELLO, his wife;
REGINALD CAIN; MOSES LAVAL; OLIVIA LAVAL, his
wife; EDWARD GOLDA; JUAN JAUME; CARMEN JAUME,
his wife; FRANCESCO BOZZI; LAURA BOZZI, his
wife; MICHAEL SABAT; ILENE SABAT, his wife;
ANDRE PIERRE; EDWARD MORRIS; VIRGINIA JEAN
MORRIS, his wife; JAMES JOHN BRADLEY; CATHERINE
BRADLEY, his wife; MARIO SANTOS; OCTAVIA SANTOS,
his wife; JAMES ZICARO; JAYNE ELLEN ZICARO, his
wife; FRED SAVAGE; ALICE SAVAGE, his wife; LUIS
ZAMORA; JUANITA ZAMORA, his wife; DAVIS THOMAS;
MARION THOMAS, his wife; CLEMENT MARRA;
CATHERINE MARRA, his wife; JOSEPH MCLAUGHLIN;
GENEVIEVE V. MCLAUGHLIN, his wife; JAMES BENSON;
JEANETTE BENSON, his wife; ALBERT BRAVO;
TOMMYE JEAN BRAVO, his wife; ISAAC JEFFRIES;
CAROLYN JEFFRIES, his wife; HERMAN BROWN;
AUDREY BROWN, his wife; DEWITT CANNON; BERNICE
CANNON, his wife; JOSE CAMACHO; CARMEN CAMACHO,
his wife; EDWARD FIELDS; MARY FIELDS, his wife;
SAM EDMONDS; DORIS EDMONDS, his wife; LOUIS
CURCIO; ANGELA CURCIO, his wife; PAUL POOLE;
KAZIMIERZ NITKOWSKI; NICEA M. NIKTOWSKI, his wife,

                                    Appellants
                    v.

E.I. DUPONT DE NEMOURS & COMPANY, a corporation
        of the State of Delaware

On Appeal From the United States District Court
for the District of New Jersey
(D.C. Civil No. 92-cv-00486)

Argued:  June 23, 1994

Before:  BECKER, HUTCHINSON, Circuit Judges
and PADOVA, District Judge[*]

(Filed September 8, 1994)

MARC J. GORDON, ESQUIRE (ARGUED)
Margolis & Gordon
485 Morris Avenue
Springfield, NJ  07081

Attorneys for Appellants


ROSEMARY J. BRUNO, ESQUIRE (ARGUED)
MARGARET R. BENNETT, ESQUIRE
Carpenter, Bennett & Morrissey
100 Mulberry Street
Three Gateway Center
Newark, NJ  07102

Attorneys for Appellee

**OPINION OF THE COURT**

BECKER, Circuit Judge.

---

[*].  The Honorable John R. Padova, United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

This appeal is from an order of the district court dismissing with prejudice under Federal Rule of Civil Procedure 12(b)(6), the products liability personal injury complaint of plaintiffs, some forty-nine former employees of Engelhard Corporation's manufacturing plant in Newark, New Jersey. Plaintiffs' complaint alleges that between 1971 and 1982, while working for Engelhard, they contracted pulmonary injury as the result of their exposure to hazardous "airborne silica particles" supplied by defendant E.I. DuPont de Nemours & Company, and released during Engelhard's metal reclamation process. With the exception of John Wojenski, all the plaintiffs had previously sued DuPont, alleging that they had sustained pulmonary disease from asbestos exposure to the same material during the same period.[1] That suit resulted in summary judgment for DuPont, which we affirmed on appeal in an unpublished opinion. See Bradley v. DuPont, No. 91-5206 (3d Cir. Dec. 24, 1991) cert. denied, 112 S. Ct. 1706 (1992).

The district court concluded that plaintiffs' present lawsuit was barred by New Jersey's entire controversy doctrine,

---

[1]. From 1970 to 1982, DuPont sent to Engelhard the waste product of DuPont's manufacture of hydrogen peroxide at its Memphis, Tennessee plant, a portion of which consisted of used filter pads. The pads were shipped to Engelhard for the recovery of palladium, a precious metal which was used as a catalyst in DuPont's manufacturing process. Engelhard's reclamation process consisted primarily of the incineration of the waste product in large furnaces, which, plaintiffs allege, released toxic smoke, dust, ash, and soot into their working environment. In 1983, Engelhard learned that the filter pads contained ten percent asbestos. Three years later, plaintiffs (except for Wojenski) initiated their first lawsuit, alleging that they had contracted pulmonary disease due to asbestos exposure from this material.

and the doctrine of collateral estoppel. Plaintiffs contended that they are not bound by the prior adverse judgment because: (1) their allegations of exposure to silica constitute a different cause of action, which was not and could not have been part of the earlier suit; and (2) they had brought new claims (for fraud and misrepresentation, medical surveillance, and emotional distress), which also were not considered in the prior action. The court rejected these contentions.

The case had metamorphosed from one alleging asbestos exposure to one alleging silica exposure based on a chemist's report stating that asbestos decomposes after incineration into the substances forsterite and silica. Plaintiffs learned of this theory during the prior proceedings in the district court, whereupon they sought to amend their complaint to allege silica exposure, but the district court denied their motion and our earlier opinion affirmed that denial.

The district court's order dismissing the complaints in the instant case was plainly correct with respect to all the plaintiffs but Wojenski. Both res judicata and the New Jersey entire controversy doctrine bar those claims, and we will affirm that portion of the order without discussion. However, we reach a different result as to Wojenski, who was not a party to the prior action. We find defendant's contention, accepted by the district court, that Wojenski's claim is barred because he was in privity with the other plaintiffs, to be fatally flawed.

None of the three potential ways in which Wojenski might be bound by the earlier judgment applies here. First, the

earlier plaintiffs might have been "virtual representatives" of Wojenski, but that is not the case because no legal relationship entitled the prior plaintiffs to represent Wojenski. Second, Wojenski might have controlled the prior litigation, but there is no such evidence. Third, the prior litigation might have been considered a class action and Wojenski a member of the class, but the district court did not certify the prior action as a class action and did not provide notice to prospective plaintiffs. We will therefore vacate the district court's order as to Wojenski and remand for further proceedings.

## I.

Under New Jersey law, which applies here, claim and issue preclusion only apply to parties or to those in privity with them. See Wunschel v. City of Jersey City, 477 A.2d 329, 333 (N.J. 1984). In the famous words of Judge Goodrich: "[P]rivity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." Bruszewski v. United States, 181 F.2d 419, 423 (3d Cir. 1950) (Goodrich, J., concurring), cert. denied, 340 U.S. 865, 71 S. Ct. 87 (1950), quoted in part in Moore v. Hafeeza, 515 A.2d 271, 274 (N.J. Super. 1986).

A relationship is usually considered "close enough" only when the party is a virtual representative of the non-party,

or when the non-party actually controls the litigation.  As the New Jersey Superior Court explained in Moore:

> Generally, one person is in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between the two as to represent the same legal right, or if a person who is not a party controls or substantially participates in the control of the presentation on behalf of a party, Restatement, Judgments 2d, § 39, or if a person who is not a party to an action is represented by a party, including an "official or agency invested by law with authority to represent the person's interests."  Id. § 41(d).

515 A.2d at 273 (citation omitted).  The scope of privity, while largely freed from the very constrictive common law mutuality anchor, remains small.  See generally Romano v. Kimmelman, 464 A.2d 1170, 1174-75 (N.J. Super. 1983), aff'd, 474 A.2d 1 (N.J. 1984).

A. Virtual Representation

Virtual representation does not mean merely that someone in the suit serves the interests of the person outside the suit.  It requires a relationship by which the party in the suit is the legally designated representative of the non-party, as is made clear from the examples in the Restatement (Second) of Judgments.  Restatement (Second) of Judgments § 41 (1982), which has been followed by the New Jersey Superior Court, see Moore, 515 A.2d at 273, reads:

A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is:

> (a) The trustee of an estate or interest of which the person is a beneficiary; or
>
> (b) Invested by the person with authority to represent him in an action; or
>
> (c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary; or
>
> (d) An official or agency invested by law with authority to represent the person's interests; or
>
> (e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member.

Applying § 41(d), some New Jersey Superior Court cases, as well as some of our own cases, find privity situations where a government agency is the designated representative of a group of individuals. See E.I.B. v. J.R.B., 611 A.2d 662, 663 (N.J. Super. 1992) (an unsuccessful paternity action brought by a mother bars a subsequent action brought by the child because, under a New Jersey statute, the mother represents the child), certification denied, 617 A.2d 1223 (1992); Equal Employment Opportunity Comm'n. v. U.S. Steel Corp., 921 F.2d 489, 495-96 (3d Cir. 1990) (under the statutory scheme, the Equal Employment

Opportunity Commission is the legal representative of the private individuals, and where an individual sues first and has his or her day in court, his or her representative cannot sue later on the same claim).  Like § 41(c) of the Restatement, our cases also include fiduciary managers of organizations of which an individual is a member.  See Bolden v. Pennsylvania State Police, 578 F.2d 912, 918 (3d Cir. 1978) (members of a labor organization are bound by a consent decree when the organization adequately represented them).  Thus, all of the Restatement (Second) of Judgments examples, New Jersey cases, and our cases finding privity have done so when there is a pre-existing legal relationship by which a party represents a non-party.

A pre-existing legal relationship is not only a sufficient condition for privity to exist, but it is also a necessary one.  See E.I.B., 611 A.2d at 663 ("Privity generally involves a party to earlier litigation so identified with a party to later litigation that they represent the same legal right."); cf. Rutgers Casualty Ins. Co. v. Dickerson, 521 A.2d 373, 376 (N.J. Super. 1987) ("privity in this context [of claim preclusion] requires some legal connection between the parties such as succession to the same rights to property").  No pre-existing legal relationship existed here.  Wojenski had no relationship with the plaintiffs in the first suit other than the fact that they all worked at the same place.

The fact that Wojenski has the same interest as the prior plaintiffs and is joined in a suit with those plaintiffs is insufficient to create privity between Wojenski and the prior

plaintiffs. In In Re Dawson, 641 A.2d 1026, 1036 (N.J. 1994), the New Jersey Supreme Court held that the rule governing accounting of a particular trust, a rule established in prior intermediate accountings of the same trust, could be relitigated because the unborn beneficiaries, who were parties to this accounting, had not been parties to the prior accountings. The court explained, "[a]lthough other beneficiaries were represented by a guardian ad litem and were parties to those prior accountings, that those beneficiaries may have had interests similar to the interests of the unborn beneficiaries does not establish privity between them for purposes of collateral estoppel." Id.

Similarly, in Eatough v. Board of Medical Examiners, 465 A.2d 934, 939 (N.J. Super. 1983), the New Jersey Superior Court held that where Dr. Eatough, one of four plaintiffs, had litigated the same issues previously, preclusion did not apply to the remaining three plaintiffs. The court stated: "[T]heir rights do not derive from [Dr. Eatough's] in any way. While there may be an identity of interests between the four plaintiffs here, the record does not permit the conclusion that Dr. Eatough was the representative of the other plaintiffs in the [prior] litigation." Id.[2] Thus, as a leading treatise summarizes, "[t]he

---

[2]. One New Jersey Superior Court case implies that an identity of interests may suffice in certain contexts to create privity. In Moore, the court held that "it appears to be the modern rule that privity should be applied when: 1. The claim of the nonparty is based on the same transaction or occurrence, 2. The interests of both claimants are similar and no adverse interests exist, 3. The nonparty had notice of the earlier action, and 4. The

bare fact that one plaintiff is joined with others who were parties and who can properly be bound by a prior proceeding does not justify preclusion of the nonparty plaintiff as well." Wright & Miller, Federal Practice and Procedure § 4449, at 416 (1981).

Nor does the fact that Wojenski had the same attorney as the plaintiffs in the first suit make preclusion appropriate. In Benson & Ford, Inc. v. Wanda Petroleum Co., 833 F.2d 1172, 1174-76 (5th Cir. 1987), for example, the fact that plaintiffs in the second suit were represented by the same attorney as plaintiffs in the first suit and that one of the plaintiffs had testified in the first suit was not enough to establish privity. In the court's view, the plaintiffs in the second suit must have exercised control in the first suit or been virtually represented in the first suit; the latter theory requires an express or implied legal relationship in which parties to the first suit were accountable to non-parties who file the second suit.[3]

(..continued)
nonparty did or had an opportunity to participate or intervene in the earlier case."  515 A.2d at 274.
        But this statement is in significant tension with the New Jersey cases holding that similarity of interests do not create privity.  Moreover, the statement is dicta because in Moore, privity existed as a result of the fact that the county board of social services, which had lost a paternity suit, was the statutory representative of the mother who now wanted to sue. 515 A.2d at 274.  Finally, we note that even if the Moore rule were the law, Wojenski's suit would not be barred, because, not having discovered his injury until the earlier suit was dismissed, Wojenski did not have an opportunity to participate in the earlier Bradley case.

[3].  Some courts seemingly have taken a broader view of virtual representation, although we think that these cases can be explained as consistent with the general pattern.  In Alpert's

Moreover, allowing Wojenski to continue his suit is the right result -- every individual is entitled to his or her day in court.  See 18 Charles Alan Wright, Arthur R. Miller, and Edward M. Cooper, Federal Practice and Procedure § 4449, at 417 (1981) ("Our deep-rooted historic tradition that everyone should have his own day in court draws from the clear experience with the general fallibility of litigation and with the specific distortions of judgment that arise from the very identity of the parties.")  Unless the individual chose another party to

(..continued)
Newspaper Delivery Inc. v. New York Times Co., 876 F.2d 266, 270-71 (2d Cir. 1989), a number of independent newspaper delivery companies, which were members of a trade association, sued the New York Times.  The Times prevailed, and then other independent companies, also members of the trade association, sued.  The Second Circuit held that the suit was barred by collateral estoppel because the association, which had financed both suits and provided litigation strategies for the complaints, was the ultimate force behind the litigation.  In short, the court found that the second set of plaintiffs had been previously adequately represented by another who had been vested with the authority of representation.  And in Ruiz v. Commissioner of Dep't of Transp., 858 F.2d 898, 903 (2d Cir. 1988), the court held that where two groups of truck drivers filed suits with identical allegations, the attorney was the same, and there was evidence of a strategy coordinated by an Industry Fund, preclusion applied.  The court reasoned that "[a]lthough not conclusive on the issue of privity, the fact that the parties in Manno and in this case had the same attorney in actions brought at about the same time is of `singular significance'".  However, in these cases, especially in New York Times, the Second Circuit essentially held that the Trade Association and Industry Fund had been parties to the first suits, and that these organizations were virtual representatives of the plaintiffs, who had pre-existing relationships with these organizations, in the second suit.  And in Ruiz, the common attorney filed the two lawsuits at roughly the same time, and there was significant evidence that the plaintiffs in the second suit controlled the first suit as part of an overarching litigation strategy.  See id. 1
Y

represent him or her in the prior suit or a law designated an agent as his or her representative, the outcome of a prior lawsuit in which the individual did not take part should not bind him or her. The fact that the plaintiff's attorney took part in a prior, similar action is irrelevant unless there is evidence that the plaintiff was, through his or her attorney, actually participating in the prior suit. Otherwise, we will inhibit the free choice of attorneys and prevent attorneys from developing an expertise through concentration in certain types of litigation.

B. Control

A second reason for finding privity is if a non-party controlled the prior lawsuit. The Restatement (Second) of Judgments § 39 (1982) states: "A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." See Moore, 515 A.2d at 273 (stating that substantial participation in the control of a suit creates privity); United States v. Webber, 396 F.2d 381, 386-87 (3d Cir. 1968) (holding that defendants were in privity with prior litigants because they controlled the prior suit). But here there is utterly no evidence that Wojenski controlled the prior lawsuit. In fact, Wojenski asserts that his injuries did not even develop until after the first suit was dismissed. Cf. Duncan v. Blacksburg, 364 F.Supp. 643, 645 (D.C. Va. 1973) "[W]hile it may well be that 13 of the 17 plaintiffs

are bound by res adjudicata, 4 of them are not, because they were not parties to the suit or privies.  They took no part and had no laboring oar.").

C. Class Action

The last category of virtual representation listed in the Restatement of Judgments is class representation.  If the first action was a class action and Wojenski was a part of the class, then he is bound by the results.  The complaint in the original suit makes it appear that the suit was intended to be a class action.  The complaint states that

> [t]his action is brought on behalf of the plaintiffs, as well as on behalf of each and all other persons similarly situated.

JA 23.  However, the district court never held a class certification hearing, certified a class, or made reference to a class.  Yet, in dismissing the current action, the court indicated that in essence it had been treating the earlier action as a class action:

> Although the plaintiffs in Bradley were not certified as a class pursuant to Rule 23, plaintiffs' counsel in Bradley held themsel[ves] out as representing all present and former employees of Englehardt, allegedly exposed to the hazardous material at issue. This representation was acknowledged by the Court in its October 19th, 1990 memorandum and order granting DuPont's motion for summary judgment.

Transcript of Motion Hearing at 26 [A 78] (Nov. 15, 1993).

Thus, we are faced with the question whether a potential class member can be bound by a prior suit that the district court later determines was essentially a class action.

Perhaps in some circumstances we would consider a prior action to constitute a class action for preclusion purposes even without formal class treatment in that action. See Wright & Miller, Federal Practice and Procedures § 4455, at 476 ("[t]he most obvious limitation is that there must actually have been a class action, although formal failure to certify an action that is in fact treated by all parties as a class action may not defeat class preclusion"); Johnson v. General Motors Corp., 598 F.2d 432, 435 (5th Cir. 1979) (where the district court in the prior action never formally certified the class but did state that plaintiff's suit was under federal class action rules and explained who constituted the class, and where the court of appeals treated the prior action as a class action under Rule 23(b)(2), the prior action was a class action with res judicata effect on class members).

Unlike Johnson, however, the district court in the original suit here did not suggest that it was treating the suit as a class action. This means that if the district court had ruled favorably to the plaintiff, Wojenski would not have automatically benefitted from that outcome, and hence it would be unfair to bind him to an outcome unfavorable to him. Moreover, because the district court did not certify a class, it did not delineate the boundaries of the class. Therefore, even if the prior suit was effectively a class action, we do not know if

Wojenski, who discovered his injury after the Bradley suit was dismissed, would have been within the class and bound by its results.

Third, and most important, we do not know if the district court would have certified the class as a Rule 23 (b)(1), (b)(2), or (b)(3) class. Because the plaintiffs were asking for damages rather than injunctive or declaratory relief, we have little doubt that the appropriate type of class action here would have been a Rule 23(b)(3) class since we have no reason to believe that a decision with respect to some class members would have impeded the ability of others to protect their interests. See Fed. R. Civ. P. 23(b). But if the district court had certified such a class, Wojenski would have had to receive notice and an opportunity to opt out before he could be bound. In Johnson, despite concluding that formal class certification was not required to bind plaintiffs on some issues, the Fifth Circuit held that before a class member "may be forever barred from pursuing an individual damage claim, . . . due process requires that he receive some form of notice that the class action is pending and that his damage claims may be adjudicated as part of it." 598 F.2d at 435 (emphasis added).

In sum, absent far greater indications that Bradley was a mandatory class action, Wojenski is not bound by the results of that action. By not joining the earlier law suit, he in essence opted for his own day in court.

The order of the district court as to Wojenski will be reversed, and his case remanded for further proceedings. In all

other respects, the order of the district court will be affirmed.
Parties to bear their own costs.