STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. EDGARDO GONZALEZ, DEFENDANT-APPELLANT.

Argued February 23, 1977—Decided December 6, 1977.

182

*Mr. Edward P. Hannigan,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. John De Cicco,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Robert J. Genatt,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

PASHMAN, J. At approximately 1:30 A.M. on November 13, 1973, defendants Edgardo Gonzalez and Candelario Sanchez were stopped on Interstate Highway 80 by two State Troopers for a speeding violation. While one officer questioned defendant, his partner illuminated the interior of the car with his flashlight. He saw what he believed to be a partially smoked marijuana cigarette on the rear floor of the car. A complete search of the vehicle followed, turning up a loaded pistol concealed under a floor mat. The officers also searched both men and found a white powdery substance on Gonzalez that was later identified as cocaine.

Sanchez and Gonzalez were subsequently named as defendants in an indictment charging them with unlawful possession of an automatic pistol, in violation of *N. J. S. A.* 2A: 151–41 (a). Gonzalez was charged in an additional indictment alleging unlawful possession of a controlled dangerous substance, in violation of *N. J. S. A.* 24:21–30.

As a result of his arrest and indictment in New Jersey, defendant was returned to prison in New York for a breach of the conditions of his parole. Although he waived extradition proceedings, New Jersey authorities did not secure his temporary custody to stand trial until April 30, 1974. In the interim, his codefendant Sanchez, had brought a motion to suppress the evidence obtained in the aforesaid warrantless search of the automobile. Sanchez contended that the trooper had no reasonable basis for believing that the cigarette butt on the floor of the car contained marijuana. Thus he allegedly lacked probable cause to conduct both the search of the car and the subsequent search of the two men. The only witness to testify at the suppression hearing was the arresting officer. The court granted the motion, ruling that the trooper's ability to identify the substance as marijuana had not been proved beyond a reasonable doubt. The State elected not to seek leave to appeal

this decision, *R.* 2:5–6(a), and the Sanchez indictment was later dismissed on its motion.

Upon his return to this State for trial, Gonzalez made a similar motion to suppress which was heard by a different judge. In addition to the ground successfully urged by Sanchez, defendant argued that the State was precluded from relitigating the question of probable cause under the doctrine of collateral estoppel. The court rejected the latter argument on the ground that Gonzalez had not been a party to the first proceeding. It also noted that defendant, unlike Sanchez, had been charged with an additional count of unlawful possession of cocaine. As in the first motion, the State relied solely on the same trooper's version of the incident. However, this time the court found that probable cause had been established beyond a reasonable doubt and denied the motion.

Defendant was tried before a jury which returned verdicts of guilty on both counts. He received consecutive sentences of three to five years for possession of the pistol and one to two years for possession of the cocaine.

In an unpublished opinion, the Appellate Division reversed the conviction on the pistol charge because of improper comments by the prosecutor at trial but affirmed the conviction on the cocaine charge.[1] It found that the disparate results of the suppression motions were "of no consequence," erroneously noting that "apparently it was defendant's failure to appear at [the Sanchez] hearing that occasioned its being held without him."[2] We granted defendant's petition for certification, 69 *N. J.* 443 (1976), limiting our consideration to the effect of the inconsistent rul-

---

[1]The court found that the prosecutor's remarks, which were conceded to be improper by the State, had not prejudiced defendant on the cocaine count because he admitted having possession of the cocaine.

[2]The record before the Appellate Division did not reveal that defendant was incarcerated in New York at the time of the hearing.

ings on the separate motions to suppress. We conclude that the doctrine of collateral estoppel should have been applied in these circumstances to suppress the fruits of the search of defendant's person. Accordingly, we reverse.

## The Issue

As presented by the defendant, the question before us is a narrow one: whether a grant of one indictee's motion to suppress evidence as illegally seized should preclude the State from relitigating the validity of the search as to a co-indictee who was unable to participate in the earlier proceeding. As he points out, the issue is further narrowed by the fact that the State could have obtained judicial review of the adverse determination on Sanchez' motion to suppress. See *R.* 2:5–6(a). Although acknowledging the traditional rule confining collateral estoppel to prior determinations involving the same parties, defendant contends that recent case law in civil litigation has largely abandoned this rule. He suggests that the present case is an appropriate instance to extend these principles to criminal law. The State, on the other hand, contends that criminal proceedings are inherently different from civil litigation, and opposes any such change. However, it recognizes the undesirability of inconsistent findings by different judges and proposes a rule of court requiring joinder in a single hearing, whenever feasible, of all suppression motions brought by co-indictees involved in the same search.

### I

Collateral estoppel is that branch of the broader law of *res judicata* which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action. *Mazzilli v. Accident and Casualty Ins. Co., etc.*, 26 *N. J.* 307, 313–314 (1958); *Kelley v. Curtiss*, 16 *N. J.* 265, 273 (1954); *Miraglia v. Miraglia*, 106 *N. J. Super.* 266,

271 (App. Div. 1969). *See also Cromwell v. Sac County,*
94 *U. S.* 351, 24 *L. Ed.* 195 (1876); Scott, Collateral Es-
toppel by Judgment, 56 *Harv. L. Rev.* 1 (1942); Develop-
ments in the Law — Res Judicata, 65 *Harv. L. Rev.* 818
(1952). Ordinarily the scope of the rule is confined to ques-
tions of fact or mixed questions of law and fact, *see United
States v. Moser,* 266 *U. S.* 236, 241–242, 45 *S. Ct.* 66, 67,
69 *L. Ed.* 262, 264 (1924)*; Restatement, Judgments,* § 68
at 293 (1942). However, its applicability also extends to
questions of law where the claims arise from the same trans-
action, or "if injustice would result." See *Washington Tp.
v. Gould,* 39 *N. J.* 527 (1963); *cf. Restatement, Judgments*
2d §§ 68, 68.1(b) at 27 (Tent. Draft No. 4, 1977) and
Comment at § 68.1 at 29–31 (which indicates that a prior
determination of an issue of law cannot be challenged un-
less the two actions involve substantially unrelated claims).

The issue of the validity of the search was a mixed ques-
tion of law and fact which was common to both the Sanchez
and the Gonzalez hearings.[3] At both hearings the critical
issue for determination was the trooper's sensory capacity
to detect the particular details of the cigarette butt and his
ability to identify those details as characteristic of a mari-
juana cigarette. If what was perceived as a marijuana butt
was in plain view, the search of the car to recover contra-
band and of the defendant as incidental to his arrest was
lawful. Both judges placed the burden on the State to sus-
tain the search beyond a reasonable doubt,[4] but on the same
facts they reached results which were directly opposite. Had
both parties brought their motions simultaneously, no such

---

[3] In view of our limited grant of certification, we are not here
called upon to determine the validity of the search.

[4] We intimate no view as to whether this is the correct standard.
*Compare State v. Whittington,* 142 *N. J. Super.* 45, 50–51 (App.
Div. 1976), *with State v. Yough,* 49 *N. J.* 587, 600–601 (1967) and
*State v. Johnson,* 68 *N. J.* 349, 352 (1975). For the purposes of
this appeal, it is sufficient that both adopted the same burden and
the State raised no objection.

inconsistency would have developed. The State would have been precluded from relitigating the legality of the search under both ordinary collateral estoppel principles and under the constitutional prohibition set forth in the double jeopardy clause. *Cf. Ashe v. Swenson,* 397 *U. S.* 436, 90 *S. Ct.* 1189, 25 *L. Ed.* 2d 469 (1970). But no constitutional command is implicated here since the defendant had not been placed in jeopardy in the Sanchez hearing. Thus, we must determine whether to adopt the same practice which is sometimes followed in civil litigation when a prior determination of an issue of fact is asserted as an estoppel against a party by one who was not himself a party to the previous action.

Early decisions treated identity of parties (or their privies) as a strict prerequisite to giving conclusive effect to a prior judicial determination of a matter. As stated by the former Court of Errors and Appeals:

The absolute necessity of mutuality in estoppels by record requires that the court should not hold a judgment conclusive in favor of a person unless it would be equally conclusive against him. [Citation omitted]

[*Miller v. Stieglitz,* 113 *N. J. L.* 40, 44 (E. & A. 1934)].

This traditional insistence on mutuality was based on the notion that it was unfair to provide a right or remedy to a party if it was unavailable to his adversary. Additional support for this rule of mutuality may have stemmed from a desire to confine the effects of litigation to the parties themselves, allowing easy calculation of liabilities without regard to the claims of non-parties. *See* Seavey, "Res Judicata with Reference to Persons Neither Parties nor Privies," 57 *Harv. L. Rev.* 98 (1943); Semmel, "Collateral Estoppel, Mutuality and Joinder of Parties," 68 *Colum. L. Rev.* 1457 (1968).

The modern trend away from this mutuality requirement began with the seminal opinion of Justice Traynor in *Bern-*

hard v. Bank of America Nat. Trust & Sav. Ass'n, 19 Cal. 2d 807, 122 P. 2d 892 (1942) which suggested a distinction between those who may assert a plea of collateral estoppel and those against whom such a plea may be asserted. He proposed that estoppel be allowed where (1) the issue decided in the prior adjudication was identical with the one presented in the subsequent action, (2) the prior action was a judgment on the merits, and (3) the party against whom it was asserted had been a party or in privity with a party to the earlier adjudication. Id. at 895. The decided weight of recent decisions has been to adopt and elaborate upon this scheme, carving out special situations where justice and fairness call for retention of the mutuality principle. See, e. g., Blonder-Tongue Labs v. University Foundation, 402 U. S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971); B. R. DeWitt, Inc. v. Hall, 19 N. Y. 2d 141, 278 N. Y. S. 2d 596, 225 N. E. 2d 195 (1967); United States v. United Air Lines, Inc., 216 F. Supp. 709 (E. D. Wash. and D. Nev. 1962), aff'd as modified sub nom. United Air Lines, Inc. v. Wiener, 335 F. 2d 379 (9 Cir. 1964), cert. dism. 379 U. S. 951, 85 S. Ct. 452, 13 L. Ed. 2d 549 (1964); Zdanok v. Glidden Co., 327 F. 2d 944 (2 Cir. 1964), cert. den. 377 U. S. 934, 84 S. Ct. 1338, 12 L. Ed. 2d 298 (1964).

This Court has recently adopted the modern view in United Rental Equipment Co. v. Aetna Life & Cas. Ins. Co., 74 N. J. 92, 101 (1977). We quoted from the tentative formulation by the American Law Institute Restatement, Judgments 2d § 88, which is set forth at length in footnote 5 below. We had earlier foreshadowed that approach in Mc-Andrew v. Mularchuk, 38 N. J. 156, 161 (1962), saying:

Generally, the question to be decided is whether a party has had his day in court on an issue, rather than whether he has had his day in court on that issue against a particular litigant. [Citations omitted.]
[Id.]

However, we would be ill-advised in emphasizing the demise of the mutuality doctrine without also adding some

important caveats. While more frequent application of collateral estoppel conserves judicial resources and avoids repetitious litigation, a variety of factors may make its use in a particular case either unjust or counterproductive.[5] A comparison of two trial court opinions, *Reardon v. Allen*, 88 *N. J. Super.* 560 (Law Div. 1965), and *Desmond v. Kramer*, 96 *N. J. Super.* 96 (Cty. Ct. 1967), demonstrates the limitations on this expansive tendency. In *Desmond, supra,* the plaintiff was one of a number of passengers who had been injured in an accident involving the defendant bus com-

---

[5]The Tentative Draft of the *Restatement, Judgments* 2d § 88 at 88–91 (No. 2, 1975), provides a convenient summary of these factors in its section dealing with this topic:

§ 88. Issue Preclusion in Subsequent Litigation with Others.

A party precluded from relitigating an issue with an opposing party, in accordance with §§ 68 and 68.1, is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which consideration should be given include those enumerated in § 68.1 and also whether:

(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;

(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and that might likely result in the issue's being differently determined;

(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;

(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;

(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or was based on a compromise verdict or finding;

(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;

(7) Other circumstances make it appropriate that the party be permitted to relitigate the issue.

pany. The bus company had been found negligent in a prior suit brought by other injured parties, and the plaintiff sought to assert a plea of collateral estoppel on the issue of liability. In granting plaintiff's motion for partial summary judgment, the court emphasized that the prior suit had involved a number of claims, virtually taking on the character of a class action, and that the issues had been vigorously contested, ultimately being confirmed on appeal. 96 *N. J. Super.* at 108.

In *Reardon, supra,* there was a finding of negligence in a prior suit between the same parties but the claim had been limited to property damage. The court observed that property damage claims are often tried by insurance carriers in courts of limited jurisdiction. To give such adjudications binding effect in subsequent personal injury actions would raise the stakes, actually resulting in more protracted litigation with attendant judicial diseconomies. 88 *N. J. Super.* at 570. *See also, Reilly v. Dziamba,* 90 *N. J. Super.* 325 (App. Div. 1966).

Thus, the traditional mutuality rule has been replaced with a flexible approach closely tied to the practicalities of certain types of litigation and to the details of the prior adjudication, rather than an indiscriminate application of collateral estoppel whenever a party may be said to have had a "day in court." The Appellate Division has aptly summarized this outlook in reviewing the doctrinal shift in recent years:

Whether collateral estoppel should apply depends — as the cases cited in both *Reardon* and *Desmond* acknowledge — on many factors, all of which are considered because they contribute to the greatest good for the greatest number so long as fairness is not sacrificed on that altar. We see no reason why 'mutuality of estoppel,' sanctified only by antiquity, should dictate from a preemptive position. It must be considered, along with all the other *pros* and *cons.* But the final result must be a sum of all the integers, and not a product of zero simply because one of the many numbers multiplied together is zero.

[*Continental Can Co. v. Hudson Foam Latex Prod.,* 129 *N. J. Super.* 426, 430 (App. Div. 1974)]

As indicated in *United Rental, supra,* we are in general accord with this view which is also basically consistent with the weight of authority elsewhere. See *Restatement, Judgments* 2d § 88, *ante* n. 5 (at page 190 n. 5). Hence, we conclude that the absence of mutuality of estoppel in this case should not automatically preclude the application of the doctrine of collateral estoppel.

## II

Extension of this view to criminal proceedings, however, poses some practical problems. Collateral estoppel has been used in criminal prosecutions to complement the constitutional protection against double jeopardy by protecting defendants against multiple prosecutions for different "offenses" based on the same set of facts. *See, e. g., Yates v. United States,* 354 *U. S.* 298, 77 *S. Ct.* 1064, 1 *L. Ed.* 2d 1356 (1957); *Sealfon v. United States,* 332 *U. S.* 575, 68 *S. Ct.* 237, 92 *L. Ed.* 180 (1948); *United States v. Oppenheimer,* 242 *U. S.* 85, 37 *S. Ct.* 68, 61 *L. Ed.* 161 (1916); *State v. Bell,* 55 *N. J.* 239 (1970); *State v. Cormier,* 46 *N. J.* 494 (1966). Thus the hallmark of this doctrine has been the identity of parties. The leading United States Supreme Court case, *Ashe v. Swenson, supra,* defined collateral estoppel to be "the principle that bars relitigation between the same parties of issues actually determined at a previous trial." 397 *U. S.* at 442, 90 *S. Ct.* at 1193, 25 *L. Ed.* 2d at 474. Mr. Justice Stewart, writing for the majority, stated:

"Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the *same* parties in any future lawsuit. [397 *U. S.* at 443, 90 *S. Ct.* at 1194, 25 *L. Ed.* 2d at 495 (emphasis supplied)]

Justice Sullivan employed this traditional definition in *State v. Redinger,* 64 *N. J.* 41 (1973), when he asserted:

Collateral estoppel applies *only* where the person involved was a party in both proceedings.

[64 *N. J.* at 46; emphasis added]

The proposed New Jersey Model Penal Code (1971) is in accord. See *New Jersey Model Penal Code* § 2C:1–8 and related Commentary (October 1971).

As a consequence, the underlying policies of collateral estoppel — prevention of waste, harassment, uncertainty and inconsistency — have usually been cast in terms of fairness to the defendant. Justice Jacobs expressed this attitude in *State v. Cormier, supra,* when he outlined the reasons for not applying the doctrine "grudgingly" in criminal cases:

The State's resources are sufficient to enable it to prepare and present its case thoroughly * * * The broadening policy considerations in favor of safeguarding individual rights of defendants and the need for conserving public energies as well as public funds, strongly suggest that where, as here, a jury has considered and rejected the State's contention in favor of the defendant's contention on the issue submitted as the crucial one, the matter should be permitted to rest.

[46 *N. J.* at 509]

This same viewpoint is reflected in the willingness of the courts to give binding effect to a general verdict of innocence when "the only rational explanation" of the jury's decision points toward a particular factual finding. *Id.* at 508–509. Since an acquittal merely establishes that the State failed to sustain its burden of proof on at least one of the elements of a crime, this approach represents an attempt to ascertain what was *probably* decided, rather than what was *necessarily* decided — a departure from the requirements in civil litigation. *Cf. Mazzilli v. Accident and Casualty Ins. Co., etc., supra* at 26 *N. J.* 315–18. See *Ashe v. Swenson, supra* 397 *U. S.* at 444, 90 *S. Ct.* 1189, 1194 ("the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality") ; *Sealfon v. United States, supra,* 332 *U. S.* at 579, 68 *S. Ct.* at 240 (jury in-

structions on which verdict rendered "must be set in a practical frame and viewed with an eye to all the circumstances of the proceeding").

These interests are implicated less directly where, as here, a defendant has not been involved in a criminal proceeding whose factual or legal determinations are sought to be invoked as an estoppel. The more persuasive consideration is the public impression of unfairness and unevenness in the judicial process when, in identical circumstances, one defendant goes free and his codefendant stands convicted. But even this factor cannot be pressed too far. Suppression of evidence because of an improper search often results in a prosecution being dropped and the offender freed. To permit a codefendant not privy to that suppression hearing to walk away when additional evidence potentially validating that search might be forthcoming would tarnish the image of justice. The public interest requires protection of the innocent citizen and punishment of the offender. The prosecutor as the representative of the public may rightly seek to uphold the truth-seeking function of the criminal justice system. *Cf. State v. Bisaccia,* 58 *N. J.* 586 (1971). We cannot ignore the fact that such a use of the exclusionary rule where constitutional rights are not implicated exacts a price which may stir understandable public resentment.

Additional reasons militating against abandonment of the *identity of parties* rule in criminal cases bear on the practicalities of litigation. The defendant emphasizes that the State may seek leave to appeal decisions in suppression hearings under *R.* 2:5–6(a), but we question whether it should be forced to do so whenever there is a codefendant lurking in the wings. A prosecutor might properly decide not to seek leave to appeal if the successful movant has already been incarcerated for a considerable time. He may exercise his discretion not to press the matter for other reasons as well. If prosecutors felt compelled to litigate each motion vigorously and to file motions for leave to appeal as a result of any expanded application of collateral estoppel in the

criminal context, the result might be to burden further an already heavy appellate caseload. Thus, a decision ostensibly calculated to serve the interests of economy would have the perverse effect of squandering valuable judicial and legal resources. Finally, a radical change would create an incentive for codefendants to schedule their motions consecutively so as to capitalize on a favorable ruling. Such manipulation may be forestalled by judicial supervision, but this possibility is nonetheless worrisome.

The only other decisions involving similar instances of inconsistent suppression orders have refused to allow a plea of collateral estoppel. *State v. Stauffer,* 112 *Ariz.* 26, 536 *P.* 2d 1044 (1975) ; *People v. Notrica,* 69 *Misc.* 2d 591, 330 *N. Y. S.* 2d 751 (App. Term, Sup. Ct. 1972). However, these decisions reflect no explicit concern for the considerations mentioned above, and we do not view them as persuasive authority for affirmance of defendant's conviction. Moreover, despite our misgivings as to the broader implications of extending the collateral estoppel doctrine, the facts of this case present such a classic example of unfairness that we feel constrained to afford the defendant the benefit of the earlier ruling invalidating the search. Of particular importance here is the defendant's incarceration in New York at the time of the Sanchez suppression hearing. His failure to join in that proceeding was not a deliberate choice reflecting trial strategy or stemming from any illegal acts, such as flight from the jurisdiction. He had readily waived extradition when requested and was returned to this State as expeditiously as the procedures allowed. Furthermore, the evidence in the two hearings was substantially identical because the State produced no new evidence to support the validity of the search in the interim between the two hearings. Thus, the inconsistent adjudications were based on precisely the same facts. Nor did the State seek to appeal the adverse ruling. See *Ante* at pp. 184–185. Under these exceptional circumstances, we think that the basic goal of fairness in the administration of justice is better served by re-

quiring consistency in outcome. *Cf. People v. Taylor,* 12 *Cal.* 3d 686, 117 *Cal. Rptr.* 70, 527 *P.* 2d 622 (1974).

The State's proposal for a Rule of Court requiring joinder of all suppression motions by codefendants offers a sensible resolution to the dilemma outlined above. Moreover, it avoids the inevitable morass of highly particularized determinations which · would result from an application of the complex analysis presently utilized to determine whether or not collateral estoppel is appropriate. See *ante* at pp. 189–190.

Our present rule, *R.* 3:5–7(a), requires a defendant to bring his motion challenging a search and seizure as unlawful within 30 days after the initial plea to the charge unless the court, for good cause, enlarges the time. Henceforth, the Rule shall be deemed amended to require joinder of all such motions by co-indictees for consolidated consideration in a single hearing.[6] Where a defendant makes a convincing showing that he was unable to participate at a prior suppression hearing in which the challenged · search was invalidated, as this defendant has done, and the evidence adduced at both hearings is substantially the same, he should be afforded the right to claim the benefits of such a hearing.[7] However, where a defendant resists such joinder or fails without adequate justification to participate in the consolidated suppression proceeding, a plea of collateral estoppel will be unavailable. In any event, sound practice requires that the same judge who presided over the first suppression hearing should ordinarily hear any later motion arising out of the same transaction.

The judgment of the Appellate Division is reversed to the extent that it affirms defendant's conviction for posses-

---

[6]Obviously the defendant could not be bound by an earlier adverse ruling under the . Fourteenth Amendment. If the Sanchez motion had been denied, defendant would not be bound by· that ruling.

· [7]The matter of formal amendment of the rule will be referred to the Supreme Court Committee on Criminal Practice.

sion of cocaine and the case is remanded for entry of an order of suppression.

CONFORD, P. J. A. D., Temporarily Assigned, concurring. The trial judge refused to give defendant the benefit of the ruling adverse to the State on Sanchez's motion to suppress solely for the reason that the rule of collateral estoppel requires mutuality of estoppel, *i. e.*, identity of parties in both proceedings. I agree with the majority holding that the mutuality principle should not have prevented the application of collateral estoppel in this case. In my view, moreover, since the Court has already, and quite soundly, abandoned the *per se* mutuality principle in civil cases, *United Rental Equip. Co. v. Aetna Life & Cas. Co.*, 74 *N. J.* 92, 101 (1977), there is no reason for its survival in criminal cases generally. The basic policy considerations of conservation of judicial resources and the appearance of fairness in the judicial system are as applicable in criminal as in civil cases. *Cf. People v. Taylor*, 12 *Cal.* 3d 686, 117 *Cal. Rptr.* 70, 76–77, 527 *P.* 2d 622, 628–629 (Sup. Ct. 1974).

I believe it unnecessary in this case to catalogue the various kinds of situations in which collateral estoppel should not be made available to a criminal defendant based on determinations of issues in a former criminal case to which he was not a party. There is a broad range of situations in which collateral estoppel will not apply even in civil cases between the same parties. See *Restatement, Judgments*, 2d, § 68.1 at 27–48 (Tent. Dr. No. 4, 1977). The American Law Institute, in tentatively adopting the modern view discarding the straitjacket of mutuality in civil cases, yet finds six specific exceptions and one omnibus exception to the general applicability of collateral estoppel notwithstanding absence of mutuality. *Restatement, Judgments*, 2d, § 88 at 90–91 (Tent. Dr. No. 2, 1975). (See, *supra*, pp. 189–190.). To these, the Institute would add all the exceptions set forth in § 68.1, *supra.*

Broadly speaking, tentative Sections 68.1 and 88 of *Restatement, Judgments*, 2d, although speaking to civil litiga-

tion,[1] seem to me to constitute a useful provisional working basis for governing application of the doctrine of collateral estoppel to issues decided against the State as against a different criminal defendant. Particularly useful is category (7) under Section 88:

Other circumstances make it appropriate that the party [here the State] be permitted to relitigate the issue.[2]

Beyond the foregoing, I would let the law in this largely uncharted area develop on a case by case basis.

Justice MOUNTAIN and Justice CLIFFORD join in this opinion.

MOUNTAIN and CLIFFORD, JJ., and CONFORD, P. J. A. D., concurring in the result.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.

---

[1]The American Law Institute, in the current development of *Restatement, Judgments*, 2d, has not yet addressed its attention specifically to preclusion of litigation of issues in successive criminal proceedings.

[2]For example, note the case where there has been a former jury acquittal of a different defendant as to the same alleged criminal transaction. I believe it wise to express a reservation as to this case. Although preclusion in such an instance ought not be ruled out automatically on mutuality grounds, there might be circumstances otherwise militating against preclusion in the broad public interest. Such a situation might be presented, for example, if it appeared probable that the jury in the first case decided for acquittal in the exercise of its "nullification" authority in the face of strong incriminating evidence. See Scheflin, "Jury Nullification —The Right to Say No," 45 *So. Cal. L. Rev.* 168 (1972) ; *United States v. Spock*, 416 *F.* 2d 165, 180–182 (1st Cir. 1969). *Cf.* § 88 (5), (7) of proposed *Restatement, Judgments*, 2d, quoted in note 2 above. I would leave this and cognate situations to cases requiring their resolution.