NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4529-18T1
     A-5680-18T1

STATE OF NEW JERSEY,

  Plaintiff-Appellant,

v.

ANTHONY G. PINSON, DARNELL
R. KONTEH, SHAHEED WROTEN,
DANIQUE SIMPSON, ANTOINE
WILLIAMS, and ASHLEY
STEWART,

  Defendants-Respondents,

and

PAUL SEXTON,

  Defendant.

_____

STATE OF NEW JERSEY,

  Plaintiff-Appellant,

v.

DARNELL R. KONTEH, and
ANTHONY G. PINSON,

  Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

**December 2, 2019**

**APPELLATE DIVISION**

Argued (A-4529-18) and Submitted (A-5680-18) October 29, 2019 – Decided December 2, 2019

Before Judges Fisher, Gilson and Rose.

On appeal from interlocutory orders of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 18-02-0346, 18-02-0348, 18-02-0349, 18-02-0351, 18-02-0352, 18-02-0353 and 18-02-0700; and Camden County, Indictment No.18-02-0425.

David Michael Liston, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant in Docket No. A-4529-18 (Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney; David Michael Liston, of counsel and on the briefs; Jill S. Mayers, Camden County Prosecutor, attorney for appellant in Docket No. A-5680-18; Jason Magid, Assistant Prosecutor, of counsel and on the brief).

Elizabeth Cheryl Jarit, Deputy Public Defender, argued the cause for respondent Anthony Pinson (Joseph E. Krakora, Public Defender, attorney; Elizabeth Cheryl Jarit, of counsel and on the brief).

Stefan Van Jura, Assistant Deputy Public Defender, argued the cause for respondent Darnell Konteh in Docket No. A-4529-18 (Joseph E. Krakora, Public Defender, attorney; Stefan Van Jura, of counsel and on the brief; Richard Sparaco, attorney for respondent Darnell Konteh in Docket No. A-5680-18).

Whitney Faith Flanagan, Assistant Deputy Public Defender, argued the cause for respondent Shaheed Wroten (Joseph E. Krakora, Public Defender, attorney, joins in the briefs of respondents Anthony Pinson and Darnell Konteh).

Roger A. Serruto argued the cause for respondent Danique Simpson (The Serruto Law Firm, PC, attorneys, join in the briefs of respondents Anthony Pinson and Darnell Konteh).

Joseph Mazraani argued the cause for respondent Antoine Williams (Mazraani & Liguori, LLP, attorneys, join in the briefs of respondents Anthony Pinson and Darnell Konteh).

Cody Tyler Mason, Assistant Deputy Public Defender, argued the cause for respondent Ashley Stewart (Joseph E. Krakora, Public Defender, attorney, joins in the briefs of respondents Anthony Pinson and Darnell Konteh).

The opinion of the court was delivered by

ROSE, J.A.D.

These appeals, calendared back-to-back and consolidated for purposes of our opinion, require us to decide whether a Law Division judge improperly invalidated an arrest warrant. Specifically, the judge concluded an affiant made a false statement in support of the arrest warrant, excised that statement from the affidavit, and concluded the affidavit no longer supported probable cause. The judge also denied the State's application to present an alternate theory of probable cause. By leave granted, the State appeals from two Middlesex County orders suppressing firearms seized from an automobile following execution of a warrant for the driver's arrest, and denying its motion to reopen the suppression

3

hearing (A-4529-18).[1]  We also granted the State leave to appeal a Camden County order, suppressing the same evidence under the collateral estoppel doctrine (A-5680-18).  After reviewing the record in light of the contentions advanced on appeal and the applicable law, we vacate the orders under review and remand the matters for further proceedings consistent with this opinion.

Because there was no evidentiary hearing in either matter, we rely upon the sparse record from the various proceedings to describe the procedural and factual background.[2]

## I.  The Complaint Warrant

The dispute over the sufficiency of the affidavit arose after grand juries in Middlesex and Camden Counties returned several indictments, charging a

---

[1]  On May 14, 2019, the judge entered two orders:  (1) an order denying the State's motion to reopen the hearing and suppressing the evidence seized from Pinson's arrest "for the reasons set forth in the attached [m]emorandum"; and (2) an "amended order," granting defendants' suppression motion "for the reasons set forth on the record on April 12, 2019."  The record does not reflect, however, that an order was entered on April 12.  See State v. Scott, 229 N.J. 469, 479 (2017) (recognizing we review orders and judgments, not the written opinions that support them); see also R. 2:3-1(b)(5).  Contrary to defendants' position, the State's motion for leave to appeal as to both orders was therefore timely filed. R. 2:5-6(a).

[2]  Pursuant to Rule 2:6-1(a)(2), the parties in the Middlesex County matter provided the trial briefs on appeal.

A-4529-18T1

multitude of weapons-related offenses, including murder, attempted murder, robbery, and carjacking. Defendants Anthony Pinson and Paul Sexton were charged in each indictment with one or more additional defendants: Darnell Konteh, Shaheed Wroten, Danique Simpson, Antoine Williams, and Ashley Stewart.[3] Seven incidents allegedly occurred over the course of two months in New Brunswick and South Brunswick; several offenses, including murder, were allegedly committed during one incident in Camden.

As part of its two-month investigation of the offenses that occurred in Middlesex County, a detective in the New Brunswick Police Department (NBPD), applied for a "Complaint Warrant" to charge and arrest Pinson, the main target, for unlawful possession of a firearm, N.J.S.A. 2C:39-5(j), and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1). Pinson's full name, address, social security number, date of birth, eye color and gender were set forth on the first page of the Complaint Warrant.

The affiant alleged under oath that Pinson "fire[d] . . . at a passing vehicle" on September 7, 2017 in New Brunswick. The statement of probable cause read:

---

[3] Sexton pled guilty to unspecified charges and is not a party to this appeal. Although Sexton was originally charged in the September 7, 2017 indictment, another grand jury returned a superseding indictment, charging only Pinson, Simpson, and Stewart.

5

BALLISTIC EVIDENCE WAS RECOVERED FROM THE SCENE AS WELL AS <u>VIDEO SURVEILLANCE THAT CAPTURED PINSON SHOOTING AT A CAR FROM A FIREARM THAT HAS YET TO BE RECOVERED.</u> A POLICE INVESTIGATION INTO PINSON SHOWED THAT HIS CELLULAR TELEPHONE WAS HITTING OFF OF A TOWER IN THE AREA AT THE TIME OF THE SHOOTING[.]

[(Emphasis added).]

The affiant swore he was "aware of the facts above because":

[HE HAD] REVIEWED THE CASE REPORT, THE BALLISTIC REPORTS AND THE VIDEO EVIDENCE. [HE HAD] ALSO REVIEWED THE CELLULAR TELEPHONE EVIDENCE[.]

A municipal judge signed the Complaint Warrant on November 29, 2017. Several hours later, detectives from the NBPD, Middlesex County Prosecutor's Office (MCPO), and Federal Bureau of Alcohol, Tobacco, Firearms and Explosives stopped Pinson's vehicle, executed the warrant, and allegedly observed the rear seat passenger, Konteh, attempting to conceal a shotgun in his pant leg. Police arrested Pinson, Konteh, and the front seat passenger, Sexton. The next morning, a Camden County Prosecutor's Office (CCPO) detective obtained a search warrant for Pinson's car, and recovered two additional firearms from the trunk. All three firearms were preliminarily matched to the ballistics

evidence recovered at the crime scenes in New Brunswick, South Brunswick, and Camden.

## II. The Middlesex County Appeal (A-4529-18)

### A.

In September 2018, Pinson, joined by Konteh, Wroten, Simpson, and Stewart moved to suppress the evidence seized from Pinson's vehicle. They primarily claimed there was insufficient probable cause to support issuance of the arrest warrant because Pinson was "not clearly identifiable" on the video footage.[4] Their brief made a passing reference to a "material misstatement,"[5] but defendants did not seek a Franks hearing.[6] The State countered the affidavit contained sufficient information for the issuing judge to find probable cause. The State did not brief any alternate theories of probable cause to justify the stop.

---

[4] The parties did not provide the video on appeal.

[5] The brief states: "In other words this material misstatement [sic] defendant's position is that the arrest warrant was not supported by sufficient probable cause."

[6] Franks v. Delaware, 438 U.S. 154 (1978). As an alternative to suppressing the evidence seized, defendants only sought an evidentiary hearing compelling the State "to produce testimony regarding the purported basis for the [a]rrest [w]arrant."

On the return date of the Middlesex County motion in February 2019, the judge viewed the video in open court, with the consent of all counsel. Defendants argued the affiant's statement identifying Pinson as the shooter was materially false and made in reckless disregard of the truth, but they did not request a Franks hearing. The judge permitted Williams – who had not joined Pinson's motion – to argue case law that had not been briefed by the parties.[7] He claimed excising the statement was required pursuant to Franks, 438 U.S. at 171, and State v. Howery, 80 N.J. 563, 568 (1979), and the remaining statements in the affidavit did not support probable cause to arrest Pinson. But, Williams did not request a Franks hearing. Instead, defendants collectively argued the motion judge should evaluate the warrant's sufficiency based on the four corners of the affidavit, even though she viewed the video and the issuing judge apparently had not.

Maintaining the warrant was based on probable cause, the State initially contended a testimonial hearing was unnecessary. The State argued the statement at issue was not materially false because the affiant did not expressly state he "identified" Pinson on the video footage; he "just sa[id] surveillance

---

[7] Repeatedly asserting his right to a speedy trial, as is his right, Williams did not file any motions. The motion judge also permitted Williams to file a brief in response to the State's motion to reopen the suppression hearing.

video show[ed] [Pinson] on the video." According to the State, the affiant "had other reasons to believe" Pinson was "on the video," and the fact that the affiant indicated he "reviewed the case report" meant that he was "sufficiently apprised of everything that [wa]s going on in the case."

Without expressly citing Franks, the State contended, however, "the only way that [the judge] would be able to determine whether it was or wasn't a material misrepresentation would be to have a hearing and ask the officer himself . . . ." The State proffered the affiant "would come in and say based on the circumstances, based on all of the information that [he] kn[e]w, [Pinson] is the person on the video."

The State argued, in the alternative, police had "reasonable suspicion to conduct a motor vehicle stop outside of that warrant." That "independent reason" included the surveillance of Pinson's car with the aid of a global positioning system (GPS) tracking device. Over objection by the defense, the judge permitted the State to file a supplemental brief to respond to the new arguments raised by Williams at the hearing, and to set forth its alternate theory for the motor vehicle stop.

The State's supplemental brief detailed the GPS surveillance of Pinson's vehicle during the hours preceding the stop. According to the State:

Pinson had been under investigation at the time for approximately two months for multiple shooting incidents that occurred in the New Brunswick and South Brunswick area. They believed him to be in possession of firearms, thus armed and dangerous. Detectives observed defendant drive from Essex County to New Brunswick and then circle the area of Remsen Avenue for approximately fifteen minutes without stopping. This area is also the area in which some of the shootings had occurred. The circling of the neighborhood for [fifteen] minutes without stopping is suspicious in and of itself. However, coupled with the fact that Pinson was presently under investigation for violent crimes involving firearms, this heightened detectives' suspicions.

Williams, joined by his co-defendants, filed a response reiterating that a Franks hearing was "wholly unnecessary," arguing there was "no explanation [the affiant] could possibly work around Franks." Williams theorized the affiant failed to watch the video and falsely represented that he had; watched the video and falsely represented the shooter was Pinson; or relied upon another officer's viewing of the video, which would amount to intentional falsehoods or statements made in reckless disregard of the truth. Williams also claimed the case report purportedly relied upon by the affiant was neither appended to, nor summarized in, the affidavit.

At the continuation of the motion hearing on April 12, 2019, the parties reiterated their positions. The judge did not conduct an evidentiary hearing. Instead, the judge framed the first issue before her as follows:

> Defendants have attacked the arrest warrant on the grounds that it lacks probable cause on its face. <u>Not that there was a falsehood or reckless disregard under Franks</u>, but again, that it doesn't satisfy the probable cause requirement.
>
> The State has conceded in its brief that [the affiant] would not be able to independently identify the figure in the video as Mr. Pinson. As a result, I find that this statement regarding video evidence cannot be considered in my analysis of the arrest warrant.
>
> . . . .
>
> The issue here is not whether the State has enough for probable cause but it is whether the issuing judge knew it at the time of signing the arrest warrant.
>
> [(Emphasis added).]

Ultimately, the judge determined "the affidavit of probable cause did not set forth sufficient evidence connecting the shootings to defendant Pinson." The judge therefore granted the suppression motion based on an invalid arrest warrant.

The judge then addressed the State's argument that an independent basis existed for justification of the stop, noting the State was prepared to present the

testimony of an NBPD detective. Defendants objected, arguing the State failed to set forth an alternate theory for the stop in its initial opposition brief. They also claimed the police reports contradicted the prosecutor's account regarding the length of time Pinson's car had circled the area prior to the stop, "and contained no other reference to independent grounds to conduct a stop." Because the judge suppressed the evidence based on the invalid warrant, Williams' attorney argued the defense "motion [wa]s concluded." He stated: "If the State wants to make a motion . . . on a different theory . . . they [sic] should actually brief the issue [as to] how they [sic] get procedurally back before the [c]ourt." The State agreed to file a motion.

About two weeks later, the judge heard argument on the State's motion to reopen the suppression motion. The State reiterated its argument that defendants had been "on notice that the State intended to argue a different theory with regards [sic] to the validity of the arrest" since the first day of argument on the suppression motion two months earlier. The State provided defendants with "all of the documents that the State would have been relying upon for [its] brief" on March 29, 2019. Defendants argued it would be fundamentally unfair to permit the State to present an alternative theory to justify the motor vehicle stop after the arrest warrant was found invalid.

In a written opinion issued on May 14, 2019, the trial judge denied the State's motion. Quoting the lengthy recitation set forth in the State's brief, the judge found "the State clearly set forth all the facts that would lead to sufficient probable cause without a warrant in this case." Citing United States v. Kithcart, 218 F.3d 213 (3d Cir. 2000), however, the judge concluded reopening the hearing and permitting the State to present its alternate theory would "strong[ly] prejudice" defendants, and "the State ha[d] offered no reasonable or adequate explanation as to why it initially failed to introduce this evidence . . . when the [s]uppression [m]otion was filed or at the first suppression hearing." Accordingly, the trial judge ordered all evidence recovered from the motor vehicle stop suppressed.

On appeal, the State claims the motion judge erroneously denied its motion to reopen the suppression hearing and present testimonial evidence where, as here, the parties disputed material facts. The State also "maintains that the affidavit of probable cause supporting Pinson's arrest warrant was sufficient and that the trial court's ruling regarding the validity of the warrant was incorrect and based on the court's inappropriate consideration of video evidence not viewed by the warrant-issuing judge." Finally, the State seeks excludable time from April 22, 2019, the date on which it filed its motion to

13

reopen, and May 14, 2019, the date on which the judge decided the motion.[8] Defendants urge us to affirm the motion judge's orders, primarily contending the State should not have multiple bites at the apple to justify the arrest.

B.

Whether an arrest warrant is supported by adequate probable cause is a question of law, which we review de novo. See State v. Handy, 206 N.J. 39, 44-45 (2011). "An arrest – the most significant type of seizure by police – requires probable cause and generally is supported by an arrest warrant or by demonstration of grounds that would have justified one." State v. Rosario, 229 N.J. 263, 272 (2017). Like a search warrant, an arrest warrant is presumed valid, and a defendant challenging its validity has the burden to prove there was no probable cause supporting the issuance of the warrant. See State v. Jones, 179 N.J. 377, 388 (2004).

A warrant cannot be based, however, on an affidavit or testimony that does not "provide . . . a substantial basis for determining the existence of probable cause . . . ." Illinois v. Gates, 462 U.S. 213, 239 (1983). For example, "probable cause is not established by a conclusory affidavit that does not provide

---

[8] By way of another opinion filed today, we reverse the judge's orders regarding excludable time for reasons that are not pertinent to this appeal. See State v. Williams, ___ N.J. Super. ___ (App. Div. 2019).

a magistrate with sufficient facts to make an independent determination as to whether the warrant should issue." State v. Novembrino, 105 N.J. 95, 109 (1987).

"For probable cause to arrest, there must be probable cause to believe that a crime has been committed and 'that the person sought to be arrested committed the offense.'" State v. Chippero, 201 N.J. 14, 28 (2009) (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000)); see also State v. Brown, 205 N.J. 133, 144 (2010). "Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." State v. Moore, 181 N.J. 40, 46 (2003) (alterations in original) (internal quotation marks omitted). "That showing calls for more than a mere suspicion of guilt, but less evidence than is needed to convict at trial." State v. Ingram, 230 N.J. 190, 213-14 (2017) (internal citations omitted).

A court must "consider the totality of the circumstances when assessing the reasonable probabilities that flow from the evidence submitted in support of a warrant application." Chippero, 201 N.J. at 27. In making the probable cause determination, the judge may consider only information which is "contained

within the four corners of the supporting affidavit" or sworn testimony provided by law enforcement personnel.  Schneider, 163 N.J. at 363; accord State v. Evers, 175 N.J. 355, 380-81 (2003); State v. Fariello, 71 N.J. 552, 565 (1976).

Citing Schneider, 163 N.J. at 363, the judge correctly observed "the probable cause determination must be made based on the information contained within the four corners of the supporting affidavit . . . ."  Unlike the arrest warrant and affidavit at issue in Schneider, however, the Complaint Warrant fully recited Pinson's pedigree information.[9]  Here, the issue is the sufficiency of the probable cause statement.

According to that statement:  (1) "ballistic evidence was recovered from the scene"; (2) "video surveillance . . . captured Pinson shooting a firearm at a car from a firearm that has yet to be recovered"; and (3) cellular tower data indicated Pinson was "in the area at the time of the shooting[.]"  Those facts were distilled from the affiant's "review [of] the case report, the ballistic reports[,] . . . the video evidence[,] . . . [and] cellular telephone evidence[.]"

---

[9]  Schneider was a civil action brought under 42 U.S.C. § 1983 based upon the plaintiff's alleged false arrest.  163 N.J. at 345.  "Neither the affidavit nor the warrant listed [Schneider's] place of residence, his place of employment, or his date of birth.  The only descriptive information in the warrant was the name 'Frank Schneider, Jr.' and a description of the [offense], but not the [offenders]."  Id. at 363.

Taken as true, the four corners of the Complaint Warrant set forth "a well[-]grounded suspicion that a crime ha[d] been . . . commited[,]" and that Pinson had committed the crime. State v. Basil, 202 N.J. 570, 585 (2010) (quoting State v. Sullivan, 169 N.J. 204, 211 (2001)). Facially, the affidavit therefore contained sufficient information to support the issuing judge's probable cause determination that Pinson possessed a firearm and unlawfully used that firearm to shoot at a passing car in New Brunswick on September 7, 2017.

But, the motion judge invalidated the arrest warrant by considering information beyond that which was contained within the four corners of the affidavit, without conducting an evidentiary hearing. The judge considered the video surveillance, which apparently had not been viewed by the issuing judge. Although the motion judge acknowledged defendants had not requested a Franks hearing, she nonetheless determined the statement was false, and excised the statement, without first determining whether the statement was made "knowingly and intentionally, or with reckless disregard for the truth." Franks, 438 U.S. at 155-56; see also Howery, 80 N.J. at 567-68. In doing so, the judge erroneously bypassed essential procedural steps, required by our jurisprudence,

notwithstanding defendants' argument that a <u>Franks</u> hearing was "wholly unnecessary."

Assuming arguendo that <u>Franks</u> even applies in New Jersey,[10] in certain circumstances, a defendant is entitled to an evidentiary hearing to challenge the veracity of a warrant affidavit. In order to necessitate a <u>Franks</u> hearing, however, the defendant first must make "a substantial preliminary showing" that specific statements contained in the affidavit were "knowingly and intentionally" false or made with "reckless disregard for the truth." 438 U.S. at 155-56. The defendant also must demonstrate that without these material misstatements, the warrant fails for lack of probable cause. <u>Ibid.</u>

"The requirement of a substantial preliminary showing" is intended "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." <u>Id.</u> at 170. The defendant must provide "[a]ffidavits or sworn or otherwise reliable statements of witnesses[,]" or satisfactorily explain their absence. <u>Id.</u> at 171. As our Supreme Court has recognized, "the limitations imposed by <u>Franks</u> are not insignificant." <u>Howery</u>, 80 N.J. at 567. Accordingly,

---

[10] Although no New Jersey case has applied <u>Franks</u> in the arrest-warrant context, <u>see</u> <u>State v. Bobo</u>, 222 N.J. Super. 30, 35-36 (App. Div. 1987), federal cases have done so. <u>See</u> <u>Herring v. United States</u>, 555 U.S. 135, 145 (2009) ("Under <u>Franks</u>, negligent police miscommunications . . . do not provide a basis to rescind a warrant and render a search or arrest invalid.").

"[i]n keeping with the purpose of the exclusionary rule as a deterrent to egregious police conduct, the defendant cannot rely on allegations of unintentional falsification in a warrant affidavit." Ibid.

In the present case, defendants opposed a Franks hearing. Notably, defendants did not file any sworn statements to suggest the affiant either lied or recklessly disregarded the truth when he swore Pinson was depicted in the video. Rather, defendants essentially contended the video spoke for itself, seemingly posturing the affiant's statement was false because he either failed to view the video or viewed it and lied about its contents. Defendants therefore convinced the judge to excise the statement at issue without meeting their burden under Franks and Howery. As the judge correctly recognized when she rendered her decision on April 12, "[d]efendants have attacked the arrest warrant on the grounds that it lacks probable cause on its face. Not that there was a falsehood or reckless disregard under Franks, but again, that it doesn't satisfy the probable cause requirement." The judge reiterated in her May 14 decision, defendants claimed "the [a]rrest [w]arrant was wholly devoid of probable cause, without a need for the [c]ourt to find a deliberate misstatement under Franks."

On the record before us, we conclude the motion judge mistakenly excised the statement that Pinson was captured shooting at a car on video surveillance

from the affidavit, without first requiring defendants to demonstrate the statement was "knowingly and intentionally" false or made with "reckless disregard for the truth." Franks, 438 U.S. at 155-56. The motion judge skipped the steps required under Franks, as adopted by Howery, and improvidently excised the statement. In effect, the judge performed judicial surgery without any authority for doing so.

We also disagree that the video conclusively established Pinson is not the shooter. Apparently, no one is identifiable on the video. But, Pinson's cell phone was "in the area at the time of the shooting[.]" And, the affiant did not affirmatively state that he positively identified Pinson on the video. Although the probable cause statement is undeniably thin, the affiant set forth sufficient probable cause that Pinson had committed the offenses charged. Considering "the reasonable probabilities that flow[ed] from the evidence submitted in support of [the] warrant application[,]" Chippero, 201 N.J. at 27, defendants did not demonstrate the arrest warrant was invalid.

C.

The State also argues the judge erred by not reopening the suppression motion. In view of our decision, we need not reach the State's contention.

D.

Finally, the State's contention that the trial judge failed to exclude time for the period between April 22, 2019 and May 14, 2019 lacks sufficient merit to warrant discussion in our written opinion.  R. 2:11-3(e)(2).  In short, the State's motion to reopen the suppression hearing was part and parcel of defendants' suppression motion.  Accordingly, the filing of the State's motion to reopen the suppression motion did not start the speedy trial clock anew.

Reversed and remanded.  We do not retain jurisdiction.

* * *

III.  The Camden County Appeal (A-5680-18)

In May 2018, Konteh, joined by Pinson, moved to suppress the same evidence seized from Pinson's vehicle as described above.  At the joint request of all counsel, that motion was carried in Camden County pending resolution of the Middlesex County motion.

In seeking the adjournment, the prosecutor informed the Camden County judge that "an identical companion suppression motion" was pending in Middlesex County and the parties did "not want two rulings by two [j]udges on the same suppression motion."

Following the Middlesex County judge's May 14, 2019 decision, the Camden County judge granted defendants' motion based on the collateral estoppel doctrine. The judge aptly determined that doctrine applies where, as here, the party asserting collateral estoppel proves:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) <u>the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding</u>.
>
> [<u>State v. Brown</u>, 394 N.J. Super. 492, 502 (App. Div. 2007).]

In <u>State v. Gonzalez</u>, our Supreme Court extended the doctrine to suppression hearings, noting "[t]he hallmark of the doctrine" in the criminal context is "the identity of the parties." 75 N.J. 181, 192 (1977). Accordingly, the Court concluded, absent unusual circumstances, a defendant can assert collateral estoppel as a bar to relitigating the issue of suppression only if he joined in the suppression motion in the first-decided action. <u>Id.</u> at 196.

The Camden County judge concluded the factual bases, issues presented, and the parties were identical in both suppression motions.

> [T]he parties . . . in both actions are identical . . . . [T]he State of New Jersey is a party in the Middlesex County

[litigation] and all the defendants in the Camden County matter are also parties in the Middlesex County matter. Likewise, the State of New Jersey is a party in the Camden County action.

On appeal, the State claims the judge improvidently applied the doctrine of collateral estoppel. The State primarily contends the MCPO and CCPO are not "in privity with each other because the [MCPO] was not a virtual representative of the [CCPO]" and the CCPO could not "control any aspects of the [Middlesex County] hearing." The State contends the CCPO "would have relied on additional facts to support a finding the motor vehicle stop was lawful[,]" e.g., "the tracking information obtained from the GPS device on defendant Pinson's vehicle."

Although we find the State's argument erroneous at best and disingenuous at worst, because we vacated the Middlesex County orders – and we find the Camden County judge correctly concluded the collateral estoppel doctrine applied to the suppression motion before him – we are likewise compelled to vacate the Camden County suppression order.[11]

---

[11] Arguably, the State also cannot complain because it invited the error. The invited error doctrine embodies "the common-sense notion that a 'disappointed litigant' cannot argue on appeal that a prior ruling was erroneous 'when that party urged the lower court to adopt the proposition now alleged to be error[.]'" State v. Munafo, 222 N.J. 480, 487 (2015) (quoting N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 340 (2010)) (citation omitted).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION