# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5301-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

N.L.S.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.D.L.
and K.V.L.,

     Minors.

_____

Submitted October 30, 2019 – Decided December 2, 2019

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FG-16-0042-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Victor E. Ramos, Assistant Deputy Public Defender, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Peter Damian Alvino, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Cory Hadley Cassar, Designated Counsel, on the brief).

PER CURIAM

Defendant N.L.S. (Nora) appeals from a June 29, 2018 judgment of guardianship terminating her parental rights to her sons, Karl and Joe.[1] We affirm substantially for the reasons set forth in Judge Vicki A. Citrino's comprehensive and well-reasoned written decision issued with the judgment.

The evidence is set forth in detail in the trial judge's decision. A summary will suffice here. Nora has a history of homelessness, chronic instability, substance abuse, and domestic violence. Both Joe and Karl have been in the same foster home since 2014. This is the New Jersey Division of Child

---

[1] We use the pseudonyms presented in defendant's brief to protect the identity of the family. This allows for ease of reference. In doing so we mean no disrespect.

Protection and Permanency's (Division) second guardianship proceeding. The first trial resulted in the termination of the biological father's parental rights on August 10, 2016,[2] but not Nora's. Regarding Nora, the first trial court found the Division satisfied its burden as to the first prong of the termination test, N.J.S.A. 30:4C-15.1(a)(1), whether the child's safety, health, or development has been or will continue to be endangered by the parental relationship, as well as the third prong of the test, whether the Division made reasonable efforts to provide services to help the parent correct the circumstances that led to the children's removal, N.J.S.A. 30:4C-15.1(a)(3). The court also found the Division had adequately explored alternatives to termination.

However, the court found the Division did not carry its burden regarding Nora with respect to the second prong of N.J.S.A. 30:4C-15.1(a), whether the "parent is unwilling or unable to eliminate the harm facing the child or . . . provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). The court found Nora no longer tested positive for illegal substances, and although she had not yet obtained independent housing, she was on the cusp of being able to provide

---

[2] The father appealed that judgment and we affirmed. N.J. Div. of Child Prot. & Permanency v. J.L., No. A-0967-16 (App. Div. Sept. 24, 2018).

a safe, secure, and permanent home for the children, independent from the father's support or influence. The court also found the Division did not satisfy the fourth prong of the test, whether the termination would not cause more harm than good, because assuming a course of continued progress, Nora "could well be able to provide a safe, secure, and permanent home" for the children "in the reasonably foreseeable future."

The Division then changed its plan, to reunification of the children with Nora, and services continued. However, Nora did not make the progress necessary to be reunited with her children, because she never demonstrated the capacity to provide a stable home for her two sons despite numerous offers of assistance from the Division and other agencies.

On November 1, 2017, the court issued a permanency order approving the Division's plan to terminate parental rights, followed by adoption, because of Nora's failure to locate stable housing, failure to engage in services, and allegations she allowed the father to have contact with the children during her parenting time. The Division then filed a renewed complaint for guardianship in December 2017, asserting Nora had not obtained stable housing, had not entered into a domestic violence shelter, had not returned deposit money lent by

A-5301-17T1

the Division, and maintained a relationship with the father despite a restraining order.

In March 2018, Nora underwent a psychological evaluation and bonding evaluations with licensed psychologist Alison Strasser Winston, Ph.D., who later testified at trial regarding the evaluations. Winston diagnosed unspecified personality disorder, as well as moderate cannabis use disorder in sustained remission. Her report noted that, since the prior guardianship trial, Nora had failed to obtain stable housing, had not complied with services or consistently attended visits, and had allowed her sons to see their father on several occasions. Winston concluded that Nora was not motivated to engage in services to correct problems that she minimized, lacked insight into her own issues, and exercised very poor judgment. According to Winston, Nora was "not able to safely parent a child." From the bonding evaluations, Winston concluded that the children had stronger bonds with the resource parents than with Nora. Winston recommended termination of parental rights and adoption by the resource parents.

On June 19, 2018, the first day of trial, the second trial court issued an order addressing collateral estoppel, ruling that the decision issued after the prior guardianship trial established the first prong, presence of past harm to the

children caused by Nora's parenting, and that the issue did not need to be re-litigated. However, the court rejected the Division's request to apply collateral estoppel to the third prong, as well as Nora's request to apply the doctrine to the second and fourth prongs.

At trial, the Division presented the testimony of Winston and two Division workers. The defense presented no fact or expert testimony. The court issued a written decision on June 29, 2018, finding that the Division satisfied its burden by clear and convincing evidence, and that termination of Nora's parental rights was in the children's best interests. The court issued an order terminating Nora's parental rights the same day. This appeal followed.

Nora argues the court erred by relying upon the doctrine of collateral estoppel to establish the first prong of the statutory standard for terminating parental rights. She also argues the evidence produced at trial by the Division does not satisfy the remaining prongs of that standard. As we previously noted, the August 2016 decision did not terminate Nora's parental rights, but rather concluded that the Division only satisfied the first prong of the best-interests standard. The first trial court found Nora was noncompliant with services until very late in the process, and noted that if Nora had stopped abusing substances after receiving the initial safety plan from the Division, the children might never

have been removed from her custody, and she may have been provided an earlier opportunity to retain custody of the children independent from the father. Nora's failure to do so resulted in the finding that her children were in fact harmed and would continue to be at risk of harm by their parental relationship with her.

At the second trial, the court found the first prong of the best-interests standard was already established, ruling that because the first trial court found the presence of prong one, the matter had already been decided and could not be re-litigated.

Collateral estoppel is "that branch of the broader law of res judicata which bars re[-]litigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 114 (2011) (quoting State v. Gonzalez, 75 N.J. 181, 186 (1977)). If "an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 115 (quoting Gonzalez, 75 N.J. at 192).

For the doctrine to apply to prevent re-litigation of an issue, the party asserting collateral estoppel must show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was

actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Estate of Dawson, 136 N.J. 1, 20–21 (1994)); accord R.D., 207 N.J. at 115.]

Courts must evaluate the "benefits flowing from [the] doctrine[]," such as "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness." R.D., 207 N.J. at 115 (alteration in original) (quoting Olivieri, 186 N.J. at 522).

Here, the second trial court found the issue presented by the first prong was identical to the issue presented to the court during the 2016 trial. The court noted that the prior court's exhaustive opinion detailed the harm suffered by the children as a result of their parental relationship with Nora, and observed that the previous court had issued a final judgment on the merits, rather than issuing a decision based on procedural issues. The determination of the first prong was essential to the prior judgment because the court could not have issued a decision without addressing that prong, and Nora was a party to the prior proceeding.

A-5301-17T1

Nora argues the fourth criteria of the collateral estoppel test—that the issue was essential to the prior judgment—was not satisfied in this case. According to Nora, the trial court did not need to find prong one was satisfied after the first trial, because the Division failed to satisfy the second and fourth prongs of the best-interests test, and the first prong is not determinative. While Nora does not challenge the applicability of the remaining criteria, she asserts that if the court did not apply collateral estoppel, her argument under the first prong would have focused "on her overcoming via services the domestic violence she had experienced and substance abuse it entailed that posed a threat to her children that through her efforts she abated."

Nora's argument under the first prong is meritless. The first prong does not focus on the parent's improvement. It merely asks whether the children have suffered harm because of the parental relationship in the past, which was clearly the case here. N.J.S.A. 30:4C-15.1(a)(1).

We also reject Nora's argument regarding the fourth part of the collateral estoppel test. Nothing suggests that the first trial court could have simply rendered a decision as to one prong while ignoring the other legal requirements. Therefore, the findings as to prong one were indeed essential to the first judgment, and the court did not err by applying collateral estoppel here.

Nora's arguments regarding the remaining parts of the statutory test also fail. The record contains substantial, credible evidence supporting the court's conclusion that Nora is unable or unwilling to provide a safe and stable home despite exhaustive efforts by the Division to help her procure housing. Under these circumstances, termination of parental rights is in the children's best interests and the trial court committed no legal errors.

Judge Citrino's opinion gave thoughtful attention to the importance of permanency and stability from the perspective of the child's needs, and she found the Division had established by clear and convincing evidence the statutory grounds for termination of Nora's parental rights. Furthermore, the judge found the Division had proven all four prongs of the best-interests test, N.J.S.A. 30:4C-15.1(a), which, in the best interest of the child, permits termination of parental rights. In re Guardianship of K.H.O., 161 N.J. 337, 347-48 (1999). In this appeal, our review of the judge's decision is limited. We defer to her expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 411-13 (1998), and we are bound by her factual findings so long as they are supported by sufficient credible evidence, New Jersey Division of Youth & Family Services v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). We conclude the factual

A-5301-17T1

findings of Judge Citrino are fully supported by the record and the legal conclusions drawn therefrom are unassailable.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION