**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0370-24

NORBERTO PERALTA,

    Petitioner-Respondent,

v.

SILVER LINE BUILDING
PRODUCTS,

    Respondent-Appellant.

_____

Argued September 18, 2025 – Decided September 24, 2025

Before Judges Mawla and Bishop-Thompson.

On appeal from the Division of Workers' Compensation, Department of Labor and Workforce Development, Claim Petition No. 2020-28541.

Daniel A. Lynn argued the cause for appellant (Biancamano & DiStefano, PC, attorneys; Daniel A. Lynn, of counsel and on the brief).

Alan T. Friedman argued the cause for respondent (Bagolie Friedman, LLC, attorneys; Alan T. Friedman, of counsel and on the brief).

PER CURIAM

Respondent Andersen/Silver Line Windows appeals from a September 24, 2024 decision granting petitioner Norberto Peralta's motion for medical benefits, and temporary benefits, and directing it to authorize and provide petitioner with the medical treatment recommended by his physician. We affirm.

Petitioner was employed by respondent as a window fabricator for twenty years. On July 16, 2020, he was injured lifting glass while in the process of fabricating a window that weighed approximately eighty pounds. Petitioner's primary care physician referred him to a specialist who performed two emergent cervical spinal surgeries. Because the surgeries were unauthorized, respondent denied compensability.

In November 2020, petitioner filed a workers' compensation claim, and moved for medical and temporary benefits. On October 9, 2023, following a plenary hearing, a judge of compensation found petitioner's July 2020 accident and the first surgery, which occurred on October 30, 2020, were compensable. However, the judge ruled the second surgery, which occurred on April 21, 2021, was not compensable. Petitioner's first surgery was an anterior cervical decompression and fusion at C5-C6. The second surgery was a posterior cervical fusion from C2-T1.

A-0370-24

Petitioner, his treating physician, and a doctor on behalf of respondent, testified at the hearing. Both doctors were qualified as experts in orthopedic spinal surgery. The judge found petitioner and both experts credible. The experts agreed: petitioner suffered permanent injuries that were causally related to the July 2020 accident; the October 2020 surgery was necessary; and he was unable to return to work because of this surgery. As a result, the court awarded petitioner temporary disability benefits from October 30, 2020 until July 27, 2021, as recommended by his doctor.

The experts disagreed about the necessity of the April 2021 surgery. Petitioner's doctor claimed it was necessary because he was experiencing persistent problems for which treatment could not be delayed. Respondent's expert opined the second surgery was unrelated to petitioner's accident and instead related to improving the degenerative conditions that pre-existed his injury.

The judge found respondent's expert more credible regarding the causal relationship and the need for the second surgery. Both doctors testified there was approximately a fifty percent chance petitioner would have "required surgery to the adjacent disc levels whether or not he suffered the work injury." Moreover, the April 2021 surgery was not emergent because it occurred six

3

A-0370-24

months after the first surgery and eight months after the accident. Petitioner's physician testified he anticipated the need for a second surgery after he completed the first surgery. Therefore, the judge concluded petitioner "should have allowed . . . respondent to take over the treatment and control the petitioner's medical care."

The October 2023 decision directed respondent to authorize and send petitioner to his doctor for a physical examination. It required respondent to provide all treatment recommended by the doctor, pay for the first surgery, and provide petitioner with temporary disability benefits from that date.

Petitioner's doctor recommended he have a third surgery, namely, an anterior cervical discectomy and fusion at C7 to T1. The third surgery would involve removing broken hardware and screws implanted during the second surgery. Respondent opposed the recommendation and pointed to the October 2023 decision, which held the second surgery was not compensable. Petitioner moved to enforce and alternatively sought an order compelling respondent to provide medical and temporary benefits. The matter was tried before a second judge, who heard testimony from petitioner and both doctors.

Neither doctor disputed the medical necessity of the third surgery, which both agreed was to revise petitioner's anterior cervical fusion and his posterior

4

fusion.  The issue was whether the surgery was compensable as causally related to petitioner's accident and the first surgery, or whether it was exclusively related to the second surgery.

Petitioner's doctor opined the third surgery was causally related to the accident.  He explained he wanted to revise the anterior surgery he performed during the first operation.  The posterior surgery was necessary to fix broken hardware he had installed during the second surgery, which broke because the bone failed to fuse.  The doctor explained that any surgery, including a fusion, has the risk to destabilize the spine.  "As a result of that stabilization, that transmits forces up and down that can lead to adjacent issues, the next level down having a disc herniation or the more levels that are fused, there is a higher risk for a nonunion and not all of those levels fusing together."

At the time of the initial surgery, the doctor did not need to treat C7 to T1.  Subsequently, petitioner "had persistent stenosis" that the doctor was "not able to decompress entirely from the [anterior] from this injury," which necessitated "the discussion of decompressing the spine posteriorly, . . . so that the [spinal] cord has adequate space."  The doctor explained that such a procedure "involv[es] a lot of levels [of the spine] and because there were a lot of levels, [petitioner] was at high risk for nonunion.  [In r]etrospect, if [he] had known

5

A-0370-24

that he would need a posterior fusion or a nonunion, [he] would have done C7-T1 at the time, even though it wasn't a problem . . . ."

Petitioner's doctor explained there is an interplay between the anterior and posterior fusions. "They assist each other in getting a successful fusion. . . . [T]hey are . . . inextricably related." An anterior fusion would support the posterior hardware. Stressors on anterior hardware could cause it to fatigue if there is no fusion. The anterior and posterior fusions were not independent of one another and it is "more common to do fusion in the [anterior] and [posterior] together, than singularly." This is because an anterior fusion can put stress on the posterior of the spine.

Respondent's doctor testified the third surgery was neither directly nor indirectly causally related to the petitioner's accident. The second surgery, which was also unrelated to the accident, was to address congenital and degenerative stenosis. Therefore, because the third surgery addressed the failed fusion arising from the second surgery, it too was not causally related to the accident. There was no issue at C7 to T1 at the time of the accident.

On cross-examination, the doctor conceded that flexion and extension of the cervical spine where a patient had an anterior fusion would place stress "on adjacent levels, the ones that still have motion in them." The doctor also agreed

6

that where a patient, such as petitioner, has had a posterior and an anterior fusion, "[t]here's definitely a relationship" between them. He opined that "[a]n anterior and posterior fusion is just a stronger construct." The doctor conceded the reason for the third surgery was to extend the anterior fusion and give petitioner's cervical spine better stabilization.

The cross-examination of respondent's doctor also revealed he had written a book, which was omitted from his curriculum vitae, dedicated to case managers and claims adjustors. The doctor derived seventy percent of his income from cases referred by claims adjustors. His book also expressed "appreciation for the education [he] received from attorneys defending the employers and insurers involved in [compensation claim] cases."

Petitioner used a cane. Petitioner testified his condition had worsened since the accident and the first two surgeries. He had constant numbness in both hands and feet and could not pick anything up when he stood for too long. He described his neck pain and demonstrated his limited ability to move his head up or down and side to side. The judge described it as an "extremely limited" range of motion. Petitioner testified he cannot work and is unable to dress or bathe himself, relying on his daughter for help with these tasks.

A-0370-24

The judge found all three witnesses credible. Petitioner's doctor was "extremely credible," and the judge gave his testimony "considerable weight" because he had examined and treated petitioner ten-to-fifteen times over the prior two years and performed the first two surgeries on his cervical spine. The judge found he "clearly articulated that the stressors and interaction of [the first two] surgeries have resulted in the need for [the third surgery] and . . . [the first surgery] did have an impact on the outcome of the broken screws implanted during [the second surgery]." In other words, the doctor opined "it was the interaction between the two fusions which place stressors on the spine."

On the other hand, respondent's doctor had examined petitioner just once for an undetermined duration three years prior yet opined there was no relation between the need for the third surgery and the accident. Instead, the doctor explained the third surgery was necessitated by a degenerative condition and the second surgery. The judge found the doctor's reasoning "vague, over broad, and not rendered within a reasonable degree of medical probability," and gave his opinion less weight. Although the doctor claimed the third surgery was necessitated by the second surgery and had no connection with the first surgery, the judge observed the doctor agreed there was "a relationship between an anterior and posterior fusion[,] which ultimately result in a stronger construct."

8

The judge found the doctor's credibility also suffered from the fact his curriculum vitae omitted that he had participated in a publication "that targeted insurance adjusters and defense attorneys." When petitioner's counsel confronted the doctor about the publication during cross-examination his answers "appeared to be uncomfortable and evasive" and his demeanor "caused [the judge] to seriously question his candidness and inherent bias as it correlates to his one-time examination of [p]etitioner and review of medical records."

Respondent argued the October 2023 ruling was res judicata and collaterally estopped petitioner from arguing the second surgery was compensable. The judge rejected this argument, and found respondent failed to show the need for the third surgery "is completely unrelated to the compensable accident" and the first surgery. He reiterated petitioner's doctor was more persuasive, and respondent's doctor had only seen petitioner once and his credibility was "suspect, as it was clearly established that he was not a neutral and detached expert witness." The doctor's opinion the third surgery was based solely on the second surgery was "self-serving." Moreover, the doctor made "no reference to the [first surgery] or its interplay and relationship to the current surgical/medical needs of [p]etitioner."

A-0370-24

The judge concluded petitioner's cervical condition was related to his accident and the third surgery was necessary for his treatment. He granted petitioner's motion for medical and temporary benefits and directed respondent to authorize and provide him with the medical treatment recommended by his doctor.

I.

On appeal, respondent challenges the judge's refusal to find collateral estoppel and res judicata barred the court from revisiting the October 2023 ruling that the second surgery was unrelated to petitioner's injury and not compensable. Independent of res judicata and collateral estoppel, respondent argues the judge's finding that the third surgery is causally related to the accident was unsupported by the evidence, as was the finding of an interplay between the first and second surgeries.

II.

"The factual findings of the compensation court are entitled to substantial deference." Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998). Our inquiry is limited "to whether the findings made . . . could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of [the] one who heard the

witnesses to judge of their credibility and with due regard to [their] expertise." Ibid. (quoting Bradley v. Henry Townsend Moving & Storage Co., 78 N.J. 532, 534 (1979)).

"We may not substitute our own factfinding for that of the [j]udge of [c]ompensation . . . ." Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000). Rather, we must defer to their factual findings and legal determinations "unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262-63 (2003) (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)). Although a judge of compensation has "expertise with respect to weighing the testimony of competing medical experts and appraising the validity of [the petitioner's] compensation claim," Ramos, 154 N.J. at 598, they must "carefully explain[] why [they] considered certain medical conclusions more persuasive than others." Smith v. John L. Montgomery Nursing Home, 327 N.J. Super. 575, 579 (App. Div. 2000).

Once that is done, we "may not 'engage in an independent assessment of the evidence as if [we] were the court of first instance.'" Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004) (quoting State v. Locurto, 157 N.J. 463,

11

471 (1999)).  Compensation judges who see and hear the testimony are in the best position to assess the demeanor and credibility of the expert witnesses.  See ibid.

A "judge of compensation 'is not bound by the conclusional opinions of any one or more, or all of the medical experts.'"  Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999) (quoting Perez v. Capitol Ornamental, Concrete Specialties, Inc., 288 N.J. Super. 359, 367 (App. Div. 1996)).  "That [the judge] gave more weight to the opinion of one physician as opposed to the other provides no reason to reverse th[e] judgment."  Bellino v. Verizon Wireless, 435 N.J. Super. 85, 95 (App. Div. 2014) (alterations in original) (citing Smith, 327 N.J. Super. at 579).

The New Jersey Workers' Compensation Act is "humane social legislation designed to place the cost of work-connected injury upon the employer who may readily provide for it as an operating expense."  Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 586 (1959).  The Act must be liberally construed "in order that its beneficent purposes may be accomplished."  Torres v. Trenton Times Newspaper, 64 N.J. 458, 461 (1974).  However, this canon of liberal construction "does not extend to 'the evaluation of credibility, or of weight or sufficiency of evidence.'"  Lindquist, 175 N.J. at 258 (quoting Oszmanski v.

12

Bergen Point Brass Foundry, Inc., 95 N.J. Super. 92, 95 (App. Div. 1967) (internal quotation marks omitted)).

Pursuant to N.J.S.A. 34:15-1, a compensable workers' compensation injury must be caused by an accident "arising out of and in the course of" employment. An employer is required to "furnish to the injured worker such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible." N.J.S.A. 34:15-15. However, there must be evidence that the issues complained of are indeed the "effects" of the injury that occurred, and "a successful petitioner in workers' compensation generally must prove both legal and medical causation when those issues are contested." Lindquist, 175 N.J. at 259. "Medical causation means the injury is a physical or emotional consequence of work exposure" and "that the disability was actually caused by the work-related event." Ibid.

"It is the petitioner's burden to establish a causal link between the employment and the [ailment]." Kiczula v. Am. Nat'l Can Co., 310 N.J. Super. 293, 303 (App. Div. 1998). "The link must be proven by a preponderance of the evidence . . . ." Ibid. The focus is on "the proof of a causal connection between

13

working conditions and the harm." Giambattista v. Thomas A. Edison, Inc., 32 N.J. Super. 103, 112 (App. Div. 1954). "The standard is one of reasonable probability; i.e., whether or not the evidence is of sufficient quality to generate a belief that the tendered hypothesis is in all likelihood the truth." Lister v. J.B. Eurell Co., 234 N.J. Super. 64, 72 (App. Div. 1989) (emphasis omitted).

Against this backdrop, and mindful of our standard of review, we affirm substantially for the reasons expressed in the judge's September 24, 2024 decision. The decision is supported by sufficient credible evidence on the record as a whole. R. 2:11-3(e)(1)(D). We add the following brief comments to address the res judicata and collateral estoppel arguments.

"[C]ollateral estoppel is that branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." N.J. Div. of Youth & Fam. Servs. v. R.D., 207 N.J. 88, 114 (2011) (emphasis omitted) (quoting State v. Gonzalez, 75 N.J. 181, 186 (1977)). If "an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 115 (quoting Gonzalez, 75 N.J. at 192) (internal quotation marks omitted).

14

The party asserting collateral estoppel must show:

(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Est. of Dawson, 136 N.J. 1, 20-21 (1994)).]

"[B]ecause [collateral estoppel] is an equitable doctrine, even if all five elements coalesce, it 'will not be applied when it is unfair to do so.'" Allen v. V & A Bros., Inc., 208 N.J. 114, 138 (2011) (quoting Olivieri, 186 N.J. at 521-22). Courts must consider the "benefits flowing from [the] doctrine[], such as 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness.'" R.D., 207 N.J. at 115 (alteration in original) (quoting Olivieri, 186 N.J. at 522).

Res judicata and collateral estoppel did not apply here because the issue in the second trial was not identical to the issue previously decided. As we recounted, the issue in the first trial was whether petitioner's accident and the two subsequent surgeries were compensable. The discrete issues adjudicated by

15

the judge in the second trial concerned whether the interplay of the first and second surgeries necessitated the third surgery to stabilize petitioner's spine because of his work-related injury.

Even if all the collateral estoppel factors were met, we discern no error in the judge's refusal to apply it to bar petitioner's claim. Doing so here, where petitioner's quality of life since the accident has deteriorated and he has continued to suffer, would neither satisfy the humane purposes of the Workers' Compensation Act nor would it be a fair result.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0370-24